CHARLES H. NELSON, Plaintiff in Error, *v.* SETH SMITH *et al.*, Defendants in Error, and *E. Contra.*

28 495
184 413

28 495
107a 357

ERROR TO WARREN.

The fact that an uninventoried stock of goods is sold on a credit, or to a relative, is not evidence of fraud.

Nor can fraud be inferred from the fact, that the vendor was indebted when he made the sale. Nor is it improper that the notes received for the goods were assigned to the father of the promisee, the former being the creditor of the latter.

Instructions by one of the parties to his assistant, being a part of the *res gestœ*, should be admitted in evidence.

THE plaintiff in error commenced this action against the defendants in error, in trespass, to recover damages for taking goods and merchandise from the plaintiff by virtue of a writ of attachment, issued to Seth Smith, one of the defendants, sheriff of Warren county, from the Circuit Court of that county, at the suit of Archibald Young, and others, against George W. Nelson, on the 16th December, 1859.

The plaintiff claimed to be the owner of the property, by virtue of a purchase on the 24th October, 1859, from George W. Nelson, and the defendants alleged by their third special plea, that the goods in controversy " had before then been fraudulently sold to him (the plaintiff) by the said George W. Nelson, to keep the same out of and beyond the reach of the creditors of the said Geo. W. Nelson, and to hinder and delay the said creditors of the said George W. Nelson."

The allegation was traversed, and issue joined thereon.

The case was tried at the March term, 1861, when a verdict was rendered for the defendants, a motion for a new trial made, which was overruled, and exception taken.

Judgment was rendered, and the case brought to this court by writ of error.

On the trial before the jury, the plaintiff proved he was retailing goods, in a brick building, in Monmouth, Warren county, Illinois ; that the defendants took the goods described in the declaration from the said storehouse and possession of plaintiff, in December, 1859 ; that they were afterwards in the possession of the defendant Smith, and an invoice taken, which was offered and read in evidence, that the goods were taken against the protest of the plaintiff.

That George W. Nelson, in December, 1859, was selling goods. He was the owner of the goods previous to the sale to plaintiff. No inventory was made; three persons were present at the time of sale. The goods bought by plaintiff would invoice about six thousand dollars. Geo. W. Nelson went to New York after the sale; probably next day ; the sale was in the morning. He was indebted to New York houses for goods at that time. Geo. W. Nelson said he had sold out the stock to plaintiff, and that the witness must look to him

for his wages.   The sale had been talked of before for a week. Plaintiff is cousin of George W. Nelson, who was a clerk before the sale; not very long.   He at times had charge of the store.   Plaintiff did not purchase any goods in the absence of George W. Nelson, while he was clerk.   George W. Nelson had no property here after the sale.

Plaintiff asked a witness whether plaintiff, at the time he sent the goods to the depot by the witness Earp, gave to Earp any instructions concerning them, and if so, to state them. To which question the defendants objected, and the court sustained the objection, and prohibited the witness from answering the question; to which ruling the plaintiff excepted.

The plaintiff asked the court to give to the jury certain instructions, among which were the following:

1. The court will instruct the jury that although a sale may have the effect to hinder or delay some of the creditors of the debtor making it, in the collection of their demands, such a debtor, however insolvent, may lawfully make such a sale for less than the property so sold is worth, for the purpose of, in good faith, having the proceeds thereof applied in discharge of any legal liability of such debtor; wherefore, although they may believe, from the evidence, that the sale in question did delay or hinder some of the creditors of George W. Nelson in the collection of their demands against him, if they further believe, from the evidence, that at the time of such sale, Ruea Nelson was guarantor, or acceptor, or both, for G. W. Nelson, for a larger amount than that of such sale; that such sale was made for $6,500; that plaintiff executed and delivered to G. W. Nelson his promissory notes therefor, making one thereof payable on the first day of March thereafter, and the others in equal sixty-day payments; and that G. W. Nelson soon, or within a week or two thereafter, in good faith, assigned and delivered said notes to Ruea Nelson, on account of his being his guarantor or acceptor, or either, as aforesaid; and that Ruea Nelson, in good faith so received such notes, and has since, as such guarantor or acceptor, or either, paid more than $6,500 for G. W. Nelson; they are bound, under any circumstances, to find a verdict for the plaintiff, if they believe fur-

ther, from the evidence, that defendants, or any of them, took or participated in taking the goods in question from the possession of the plaintiff; and that such verdict should be against such defendants as they may, from the evidence, believe took or participated in taking such goods.

But the court refused to give such instruction to the jury, but modified it by adding thereto the following words, to wit:

" If the jury further believe, from the evidence, that the sale between G. W. Nelson and plaintiff was not made for the purpose of hindering, delaying or defrauding the creditors of G. W. Nelson, by G. W. Nelson and the plaintiff."

And gave the instruction so modified.

7. The court will instruct the jury that there is no law requiring a debtor, however insolvent, to keep his property until a creditor can attach it, or have it levied upon with an execution ; that such debtor may in good faith, and for a valuable consideration, though with the avowed intention of defeating an honest claim, if no lien exists to forbid it, and there is not in this case such lien, sell all of his property for a fair price, and apply the proceeds thereof to the payment of one guarantor, though such sale and application exhausts his whole estate, and leaves all his creditors unpaid ; wherefore, should they, from the evidence, believe that the sale in question was so made, and that at the time of making thereof, Ruea Nelson had become guarantor of Geo. W. Nelson for more than $6,500, and that the proceeds thereof were in good faith paid to him by G. W. Nelson, by reason of his being such guarantor, and that G. W. Nelson is indebted to Ruea Nelson more than $6,500, by reason of payments made by Ruea Nelson to the creditors of said G. W. Nelson, by reason of being such guarantor, they should find such sale valid and binding upon G. W. Nelson, and his creditors, though they may further believe, from the evidence, that G. W. Nelson was, when it was made, insolvent.

Which seventh instruction the court refused to give to the jury ; to which refusal the plaintiff excepted.

The court then gave, on the part of the defendants, among others, the following instructions to the jury:

10.   A conveyance or sale of property, made with the intent, on the part of the vendor, known to the vendee and participated in by him, to delay, defeat, hinder or defraud a particular creditor from obtaining his debt, though made for a valuable and full consideration, is fraudulent and void as against such creditors, or any creditors who have been thus hindered or delayed.

12.   An intent actually to defraud creditors is to be legally inferred from the grantors being insolvent at the time, or greatly embarrassed; and if, therefore, the jury believe, from all the evidence in this case, that George W. Nelson was insolvent at the time of the sale from him to the plaintiff, they would be justified in finding that the intent of George W. Nelson, in making that sale, was to hinder and delay his creditors.

To the giving of which instructions the plaintiff excepted.

The jury found a verdict for defendants. Whereupon the plaintiff moved the court for a new trial; but the court overruled the motion, and rendered judgment on the verdict; to which ruling of the court the plaintiff excepted.

The plaintiff now assigns the following errors, to wit:

1.   The Circuit Court erred in admitting improper evidence for the defendants.

2.   The Circuit Court erred in excluding from the jury proper evidence for the plaintiff.

3.   The Circuit Court erred in refusing to give to the jury instructions 1 and 7, as requested by the plaintiff, and in modifying the said instruction 1.

4.   The Circuit Court erred in giving to the jury instructions 10 and 12, on the part of the defendants.

5.   The Circuit Court erred in overruling the plaintiff's motion for a new trial.

(There was a case between the same parties, arising out of the same state of facts; in which the opinion immediately follows this.)

W. C. GOUDY, for Plaintiff in Error.

The true construction of the statute of frauds requires, that the sale must be "had and made or contrived of malice, fraud, collusion, or guile, with the intent (*actual*) to hinder and delay creditors." Burrill on Assignments; *Ewing* v. *Runkle*, 20 Ill.; *Sackett et al.* v. *Mansfield*, 26 Ill. 28; *Myers* v. *Kinzie*, 26 Ill. 36.

A debtor may prefer one creditor over others by assignment, judgment, sale of property, or otherwise, even if made with the actual intent to hinder, delay or defeat those not preferred. *Pickstock* v. *Lyster*, 3 Maule & S. 371; *Holbird* v. *Anderson*, 5 T. R. 235; *Hartshorn* v. *Eames*, 31 Me. 98; *Wilder* v. *Winne*, 6 Cow. 284; *Anderson* v. *Smith*, 5 Blackf. 395; *Kirtland* v. *Snow*, 20 Conn. 23.

The instructions of the plaintiff to Earp, when he hauled the boxes, were a part of the *res gestæ*, and admissible. *Rigg* v. *Cook*, 4 Gilm. 336; *Thomas* v. *Leonard*, 4 Scam. 558; 1 Stark. Ev. 62; *Proctor* v. *Lewistown*, 25 Ill. 153.

E. S. SMITH, for Defendants in Error.

The sale from George to Charles Nelson was fraudulent, and designed to hinder creditors. 24 Verm. 528; 25 Penn. State, 516; 21 Barbour, 88; 7 Cowen, 734; Cowp. 434; 1 Carter, 336; 14 John. 493; 13 Ill. 394; 3 Atk. 235; 4 B. Mon. 43; 2 John. Ch. 43; 17 John. Ch. 151; 6 McLean, 23; 13 Penn. State, 587, 588; 3 Ind. 576—574; 2 Peters, 107; 3 Fairf. 518; 1 Bar. 474; 6 Penn. State, 245; 4 Smedes & Marsh. 74.

WALKER, J. It is insisted that the sale by George W. Nelson, to plaintiff in error, was fraudulent and void, it having, as it is urged, been made for the purpose of hindering and delaying creditors. Questions, arising under the statute of frauds, both in this country and Great Britain, have been perhaps more numerous than under any other statute. Owing to the endless variety of the modes adopted, by which to cover property, and prevent its being reached by creditors, it can hardly be expected that courts can ever, by decision, settle all questions which may arise in such cases. All of the forms

usually employed by the honest and upright, and such as are universally adopted by business men, are readily employed by the dishonest and corrupt, to cover the most fraudulent transactions. On the facts presented in the record, two juries, probably equally intelligent and upright, have arrived at opposite conclusions.

Upon the most careful examination which we have been able to bestow, we are satisfied that the jury was not warranted in this case, from the evidence, in finding the transaction fraudulent. It is in proof, that sales of stocks of goods not unfrequently occur, without an invoice being taken. The evidence shows, that the sale was for a sum that in every respect seems to be fair. The price paid was neither so large or so small as to excite suspicion that the sale was only colorable. There does not seem to have been any unusual degree of haste in consummating the sale. Nor was there any secrecy attending the transaction. The fact that the sale was on a credit, is not evidence of fraud, nor was the time given for payment unreasonable. The fact, that the sale was made to a relative is not unusual, and is not a badge of fraud. Nor can fraud be inferred from the fact that the vendor was indebted at the time he made the sale. He most clearly had the right to transfer the notes to his father, to whom he was indebted in a much larger sum, and there is no evidence in this record, that his father's claims were not perfectly just. These facts, whether considered separately or together, we think, fail to establish fraud in the sale.

The evidence offered to prove what directions were given by plaintiff in error, to the drayman, where the goods were being delivered at the depot, we think, were a part of the *res gestæ*, and, if pertinent, were properly admissible. They were given at the time of the sale, before suit was instituted, and before it could be known that any contest would arise, and at a time when no motive is perceived why false statements should have been made. Still their admissibility would depend upon whether they were pertinent to the issue, and as it was not disclosed what they were, it cannot be seen whether the court erred in rejecting the evidence.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*

S. Smith *et al.*, Plaintiffs in Error, }
     *v.*
C. S. Nelson, Defendant in Error. }

Walker, J. The facts in this case are the same as the foregoing, but the finding of the jury was for the plaintiff below. The reasoning in the above opinion applies to this case in every particular. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*