HENRY C. WATERMAN

*v.*

JOHN S. DONALSON.

1. FRAUD — *sale of goods.* Fraud in the purchase of a stock of goods must be proved to subject them to the debts of the vendor. The mere fact that one of two partners said he intended to pay such debts as he could, and to " break full-handed," does not prove fraud in the sale of the goods, unless there is evidence that the purchaser participated in the fraud. And when he refused to become a sham purchaser, and refused to have any connection with the matter unless the sale was *bona fide*, in the absence of other evidence of fraud, it will not be presumed that he was guilty of fraud.

2. SAME — *adequacy of price.* Where it appears that a firm sold their stock of goods to a creditor, in satisfaction of his debt against the firm, and he was to pay other debts of the firm for the balance of the price of the stock, and

it was invoiced to him at twenty-five per cent less than it cost, it being old and broken, it will not be inferred that there was fraud. A mere doubt of the fairness of a transaction is not sufficient, but fraud must be proved by a preponderance of evidence. Nor will the court infer that such a sale is fraudulent because it is made to an uncle of one of the partners.

WRIT OF ERROR to the Circuit Court of the county of Macon; the Hon. CHARLES EMERSON, Judge, presiding.

This was an action of replevin, brought by Henry C. Waterman, in the Fayette Circuit Court, against John T. Dalton, for the recovery of a quantity of goods, wares and merchandise. The declaration was in the usual form, and the defendant filed pleas of *non cepit, non detinet,* property in Waterman and Anderson, and a plea justifying the taking, as sheriff of Fayette county, by virtue of certain writs of attachment in his hands against Waterman. The venue was afterward changed to the Circuit Court of Macon county. A trial was had by the court, a jury having been waived by agreement of the parties.

On the trial, it appeared that Waterman and Anderson were partners in the hardware business in Vandalia; that, on the 2d of March, 1866, David A. Waterman sold his interest in the business to plaintiff and executed a regular bill of sale; that Waterman had borrowed of plaintiff, six weeks or two months previous to the sale, one thousand dollars, which was used in the business of the firm; that the firm gave a note to Austin & Bowles, with power to confess a judgment, and plaintiff, learning that his debt was not secure, came from Ohio. At this time the sheriff had an execution in his hands against the firm for $267, in favor of Austin & Bowles. Plaintiff, after some negotiation, purchased Waterman's interest in the stock of hardware in satisfaction of his debt, and by assuming the payment of a number of debts incurred for the firm. The consideration paid and to be paid amounted to about $2,600; and it appears that the stock, at wholesale prices, amounted to about $3,500 when first purchased.

The possession of the goods was delivered to plaintiff, and the creditors of the firm afterward sued out writs of attach-

ment, which were levied upon the goods. There was some evidence tending to prove that Waterman threatened to defraud his creditors, and had proposed to plaintiff to make a fictitious sale to him, but this he persistently refused, saying if he purchased, it should be a *bona fide* transaction.

The court below found the issues for the defendant, and awarded a return of the property. To reverse that judgment, plaintiff prosecutes this writ of error.

Messrs HENRY & FOUKE and Mr. A. J. GALLAGHER, for the plaintiff in error.

Mr. J. P. VAN DORSTEN and Messrs. NELSON & ROBY, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

It is insisted, that the sale from David A. Waterman and Joseph Anderson, to Henry C. Waterman was *bona fide*, and that the court below erred in finding for the defendant. That David A. Waterman was indebted to plaintiff in error, in the sum of $1,000 and interest thereon, there seems to be no doubt. And that the note was given up seems to be equally well established. Nor does there seem to be any evidence that this debt was fraudulent. It is also proved, that plaintiff in error paid to Anderson $300 for his interest. And the balance of the consideration appears to have consisted of an undertaking by plaintiff in error to pay some debts of David A. Waterman, amounting in the aggregate to the sum of $805. The interest on the note and the expenses charged for attempting to collect it was placed at $250, and the judgment of Austin and Bowles for $269, which was a lien on the goods, constituted the consideration paid for them. The bill of sale, however, from David A. Waterman to plaintiff in error, states that the consideration paid and to be paid for his interest was $2,060, which is about the sum excluding the judgment. But that

and the sum paid to Anderson added, make the entire consideration $2,629, paid for the stock of goods.

The evidence seems to establish the value of the stock of goods at about the sum of $3,549, at Chicago prices. This would be about $900 less than their true value. As to Anderson's interest, it seems that he put in as capital but $100, the rest being furnished by Waterman. It also appears that the debts which plaintiff in error assumed to pay had been incurred for the benefit of the firm, although he was individually liable for their payment.

The evidence shows that Waterman, at different times, made declarations that clearly manifested an intention on his part to defraud their creditors. He seems, before the sale, to have stated that he would pay what he could, let the other creditors go, and break full handed. After the sale was made, he stated that "men ought to be smart, like myself, and keep their money in their pockets." But we see nothing showing Anderson's intention beyond what may be inferred from the sale itself.

Nor is there any thing in the record which would implicate plaintiff in error with such a design. Henry testifies that David A. proposed to him to make a sham sale, the night it was consummated, but he refused, and stated if he purchased, it must be a *bona fide* transaction. He went into immediate possession, and continued it until the goods were attached. He canceled a note he held against the principal partner, and paid the other certainly all his interest was worth. But it is insisted that he should be charged with a fraudulent intent, because the price paid for the goods was inadequate. It is true, that, estimating them at the wholesale price for new goods, they were worth more. But the price paid was twenty-five per cent deducted from the cost price, which we are not prepared to say was grossly inadequate — so much so as to prove a fraudulent intention on the part of the purchaser.

Nor does the fact that he was the uncle of David A. Waterman prove that he intended to aid and assist him in defrauding his creditors. Relatives may undeniably trade with each

other as well as strangers. When all of the evidence in the case is considered, we do not see that plaintiff in error has acted fraudulently in making the purchase; and, unless he intended to aid the other parties in hindering and delaying their creditors in the collection of their debts, he was entitled to hold the goods. From the fact that fraud usually assumes all of the forms of fairness and good faith, it is frequently a, matter of much difficulty to detect its presence. But, nevertheless, we usually expect to find in such transactions, facts and circumstances from which the mind is convinced that it does exist. In this case, the evidence fails to produce that effect. It may create a doubt of the fairness of the transaction, but that is not sufficient to overturn a sale and deprive parties of title to property which they seem to have acquired in the usual course of business.

We are, therefore, of the opinion that this case should be submitted to another jury, and the judgment is reversed and the cause remanded.

*Judgment reversed.*