JOHN SCHROEDER

*v.*

THOMAS WALSH.

*Filed at Ottawa March 22, 1887.*

1. FRAUDULENT CONVEYANCE—*both parties must participate.* As a general rule, to render a sale or conveyance fraudulent as to creditors of the vendor, there must be mutuality or participation in the fraudulent intent on the part of both the vendor and the purchaser.

2. SAME—*evidence—to establish fraud.* Where a sale of goods is attacked as being in fraud of creditors of the vendor, the fraud must be shown by at least a preponderance of the evidence, or the sale will not be defeated. Generally, the proof of the fraud should be clear and satisfactory.

3. Where a party proves a purchase of goods which appears on its face to be free from fraud, and shows the payment of a fair and adequate consideration and an actual change of possession, he makes out a *prima facie* title to the property; and it is incumbent on one attacking the same for fraud as against creditors, to establish the fraud by a preponderance of evidence.

Statement of the case.

120    403
109a  [2]375

120    403
208   [2]500
208   [2]601

4.. For the purpose of showing that a sale of a lot of goods by a failing debtor to a relative was fraudulent as to creditors, the creditor offered to show that on the same day a judgment was entered by confession in favor of another relative, and against the debtor, and that an execution was taken out under the judgment. There was nothing to connect the purchaser of the goods with this latter matter: *Held,* that the evidence was properly excluded.

5. In such a case, the court instructed, for the vendee, that "a man has a perfect right to deal with his relations,—to buy and sell from or to them; and the presumption of the law is, that dealings between relatives are fair and honest, without any wrongful or fraudulent intent, and no presumption of fraud attaches to such dealings," etc.: *Held,* that there was no error in giving the instruction.

6. SAME—*preference of creditors.* In the absence of any bankrupt law or statute to the contrary, the law is well settled that a debtor in failing circumstances, not seeking the benefit of the general Assignment law, may prefer one creditor to another equally meritorious, if done in good faith. The statute regulating assignments by insolvents has no application to such a case.

7. INSTRUCTION—*construed—as to character of proof to show fraud.* On the trial of an issue whether a sale of goods was made to defraud creditors, the court told the jury that they were not permitted to guess, or suspect, or presume fraud, but must find it from the evidence, as they would any other fact: *Held,* not liable to the objection of being calculated to make the jury believe fraud could be shown only by direct evidence, and not by circumstances, especially when such impression is guarded against by opposing instructions.

8. APPEAL—*reviewing facts.* Where the Appellate Court finds, from the evidence, that a sale of property was not made with intent to hinder, delay or defraud creditors, this court, on appeal or error, will be bound by such finding.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Grundy county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This was an action of replevin, brought by Thomas Walsh, in the circuit court of Grundy county, on October 5, 1878, against John Schroeder, sheriff of the county, for the recovery of a stock of goods valued at $2000. The defendant pleaded *non cepit, non detinet,* property in Ward & Pierce, and property in the defendant by virtue of a levy of a writ of attachment issued out of said court, at the suit of William Young

& Co., against said Ward & Pierce, bearing date September 26, 1878. Issues were formed under these pleas, denying the wrongful taking and detention, asserting property in the plaintiff, and denying that the defendant was sheriff, and the issue and levy of the writ of attachment.

On the first trial, there was a verdict and judgment for the plaintiff, which was reversed by the Appellate Court for the Second District, and the cause remanded. A second trial was had, resulting as on the first. The defendant moved for a new trial, generally, without assigning the grounds of the motion in writing, which motion was overruled, whereupon the defendant appealed to the Appellate Court, assigning for errors, first, that the court erred in giving each and every of the plaintiff's instructions, especially those numbered 4, 7, 8, 9, 10, 11, 12, 15, 16, 17 and 19; second, that the court erred in modifying defendant's fourth and fifth instructions; third, that the verdict of the jury was contrary to the law, and not warranted by the evidence; and fourth, that the court erred in overruling the motion for a new trial, and in rendering judgment on the verdict.

The facts of the case, briefly stated, are these: In 1876, the firm of Ward & Pierce, composed of Samuel Ward and W. Scott Pierce, became partners, as grain dealers, at Verona, Grundy county, in this State. They built a grain elevator on railroad ground, and soon increased their business by engaging in the coal and lumber traffic, and also by dealing in cattle. They soon became largely indebted in excess of their assets. On January 24, 1878, they gave their note to one E. Hopkins, for the sum of $3000, payable in nine months, which was signed by the firm, (they being principals,) and by Thomas Walsh, William Pierce, Randolph Hill and Samuel Small. This note was assigned by the payee to William Young & Co., commission merchants of Chicago, who, from time to time, made large advances of money to Ward & Pierce, with which to purchase corn. Walsh, W. Scott Pierce and

Small were sons-in-law of Samuel Ward. It was also claimed that the firm was indebted to Walsh in the sum of $1000 for money loaned, and about $700 on account. Ward owned a storehouse and lot in Verona, which was mortgaged to secure the sum of $240, to J. H. Skeel & Co. This lot was worth about $1000. Ward was also the owner of $201\frac{1}{2}$ acres of land, and held a contract of purchase for 60 acres more of land, on which he had paid $800, and was to pay $1000 more.

On September 14, 1878, Samuel Ward executed and acknowledged three deeds before W. Scott Pierce, who was a notary public,—one to Thomas Walsh, for $88\frac{1}{2}$ acres of land, for the expressed consideration of $1000; another to Walsh, for the store building and lot, for the expressed consideration of $560; and the third to Millard Small, his son-in-law, for 113 acres of land, for the expressed consideration of $760; and he also assigned to Small the contract for the purchase of the 60 acre tract. There was a mortgage of $1500 on the $88\frac{1}{2}$ acre tract. The other tract conveyed to Small was also incumbered to the amount of $3000. These three deeds were recorded September 17, 1878. On the day last named, a judgment by confession was entered up in the circuit court of Grundy county, against Ward & Pierce, and in favor of William Pierce, one of the sureties on the Hopkins note, for $3137.79, on a judgment note of Ward & Pierce, dated September 2, 1878, upon which an execution was issued. On the same day, Ward & Pierce sold their entire stock of goods to Walsh, for the sum of $2000 in cash paid down, and the latter took immediate possession of the goods. This money, or nearly all of it, was applied by W. Scott Pierce upon the Hopkins note. William Young & Co., on learning of these transactions, had a judgment by confession entered upon the Hopkins note of $3000, which was, on September 26, 1878, paid by W. Scott Pierce. On the same day this judgment was paid, Young & Co. brought an action of assumpsit in the Grundy circuit court, against Ward & Pierce, in which they

claimed $15,000, and on the same day sued out an attachment in aid thereof, under which, the defendant, Schroeder, as sheriff, levied upon the lot of goods sold by Ward & Pierce to Walsh.

Mr. P. A. ARMSTRONG, and Messrs. BISBEE, AHRENS & DECKER, for the appellant.

Mr. S. C. STOUGH, for the appellee.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This controversy involves the validity of a sale of a lot of goods, made by Ward & Pierce, on September 17, 1878, to the appellee, Thomas Walsh, which is claimed to be fraudulent as to the creditors of that firm. The finding of the Appellate Court that this sale was *bona fide*, and was not made to disturb, delay, hinder or defraud creditors, must be accepted by this court as a finality, from the evidence, regardless of the conclusion we might have reached from a consideration of the evidence, and it only remains to determine the question of law presented for our consideration.

The point is made in argument, that the trial court erred in its refusal to admit in evidence the judgment by confession in favor of William Pierce, and against Ward & Pierce, of the date of September 17, 1878, for $3137.79, entered upon the judgment note of September 2, 1878, together with the execution issued thereon, and the sheriff's return on the same. There is no assignment of error calling in question the propriety of any ruling of the court in the exclusion of evidence, unless that is covered by the assignment of error for refusing a new trial. It is not perceived how the confession of a judgment in favor of a third person, whether proper or not, can affect the rights of the appellee, who is not shown to have been present, or in any way connected with it. He is not called upon to explain his vendor's transactions with others, when

he is not a party to them and has no connection with them. It is enough for him to show that he is not subject to the imputation of fraud on his part.

Objection is made to appellee's fourth instruction, that it declares that a preponderance of evidence is necessary to establish fraud. When a party proves a purchase of goods which appears on its face to be free from fraud, and shows the payment of a fair and adequate consideration, and an actual change of possession, he makes out a *prima facie* title to the property, and it is incumbent on one attacking the same for fraud, as against creditors, to establish the fraud by a preponderance of evidence, in order to defeat the sale.

We are referred to *Bryant* v. *Simoneau*, 51 Ill. 324, where the court say: "While fraud can not be proved by circumstances that merely raise a suspicion, yet when they are so strong as to produce a conviction of the truth of the charge, although there may remain some doubt, then it is proved. This is believed to be the extent of the rule that fraud must be proved." The rule announced in that case is not at variance with the rule stated in the instruction. Fraud may be shown by circumstances, but when the evidence, whether it be direct or circumstantial, is so strong as to produce conviction in the mind, of the truth of the charge, it will be sufficient. But this does not authorize the finding of fraud on less than a preponderance of the evidence, taken as a whole. By the words, "preponderance of evidence," is meant the greater weight of evidence, and it is difficult to see how any disputed question of fact can be found except by the greater weight of evidence. The difference in the weight may be slight, but unless it preponderates on one side, or has greater weight than on the other, the matter in dispute can not be said to be proved. If the evidence, in its weight, is equally balanced between the contending parties, the one holding the affirmative of the issue must fail; and the same may be said when he has less than a preponderance of the evidence. Bump, in

his work on Fraudulent Conveyances, page 603, says : "While the law abhors fraud, it is also unwilling to impute it on slight and trivial evidence, and thereby cast an unjust reproach upon the character of the parties. (*Blow* v. *Gage*, 44 Ill. 208.) Such an imputation is grave in its character, and it can only be sustained on satisfactory proof. If the evidence is so conflicting that no conclusion can be reached, the transaction must be sustained, upon the principle that the burden of proof is on the party who assails it, and if he does no more than create an equilibrium, he fails to make out his case." On page 604, the same author says : "What amount or weight of evidence is sufficient proof of a fraudulent intent, is not a matter of legal definition. If the evidence is admissible, as conducing in any degree to the proof of the fact, the only legal test applicable to it upon such an issue, is its sufficiency to satisfy the mind and conscience, and produce a satisfactory conviction or belief. (*Carter* v. *Gunnels*, 67 Ill. 270.) The proof, however, must be satisfactory. It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts, from which a legitimate inference of a fraudulent intent may be drawn. * * * As an allegation of fraud is against the presumption of honesty, it requires stronger proof than if no such presumption existed."

This court has frequently held, that the evidence must be clear and satisfactory to establish fraud against creditors in a transaction. . (*Pratt* v. *Pratt*, 96 Ill. 184; *Bowden* v. *Bowden*, 75 id. 143; *Blow* v. *Gage*, 44 id. 208.) In *Bonnell* v. *Wilder*, 67 Ill. 330, this court say : "It is a well established rule in all courts, that a party who makes an affirmative allegation must maintain it by proof. His proof must be superior to that offered by his adversary. (*Watt* v. *Kirby*, 15 Ill. 200; *Union National Bank* v. *Baldenwick*, 45 id. 375.) When a party affirms the existence of a material fact, he must prove

it, or the negative will be presumed. And when the proof is equally balanced, or the jury are unable to determine that it preponderates in favor of the affirmative, the presumption of the negative is not overcome. This equilibrium may be destroyed by the surrounding circumstances."

The appellee's sixth instruction is as follows:

"Fraud is never to be presumed, but must be affirmatively proved by the party alleging the same. The law presumes that all men are fair and honest,—that their dealings are in good faith, and without intention to disturb, cheat, hinder, delay or defraud others; and if any transaction called in question is equally capable of two constructions,—one that is fair and honest, and the other that is dishonest,—there the law is, that the transaction questioned is presumed to be honest and fair."

The objection urged to this instruction is, that it requires fraud to be shown by affirmative testimony, and excludes all circumstantial evidence. We do not think it does so, by any fair and reasonable construction. Fraud in fact, as contradistinguished from fraud in law, is never presumed without evidence, but must be proved by either direct or indirect evidence. The instruction does not undertake to say what *kind* of evidence must be adduced, but its drift and purpose is to show that the party charging fraud has the affirmative of the issue, and must sustain the charge, by proof on his part. He may do this by showing facts or circumstances from which fraud is inferred, and thus establish fraud affirmatively. This instruction is not obnoxious to the objection made to it.

Appellee's seventh instruction is also questioned, as being the reverse of the law in both its propositions. It reads:

"A man has a perfect right to deal with his friends and relations,—to buy and sell from or to them,—and the presumption of the law is, that dealings between relatives are fair and honest, without any wrongful or fraudulent intent, and no presumption of fraud attaches to such dealings; and

if a man finds himself in failing circumstances, he has a right to prefer one creditor to another,—to so dispose of his property that one of his creditors shall receive his pay in full, and another receive nothing. Nor is there any presumption of fraud in so doing."

The question involved in the first part of this instruction has been frequently before this court, and it has held, that mere relationship between the vendor and vendee, without other *indicia* of fraud, affords no presumption of fraud. In *Nelson* v. *Smith*, 28 Ill. 495, this court say: "The fact that the sale was made to a relative, is not unusual, and is not a badge of fraud. Nor can fraud be inferred from the fact that the vendor was indebted at the time he made the sale." In *Wightman* v. *Hart*, 37. Ill. 123, the court say: "Nor does the fact that Albert and Charles (the purchasers) were relatives, prove fraud. It may be a circumstance to excite suspicion, but, of itself, is not proof." In *Waterman* v. *Donalson*, 43 Ill. 29, it is said: "Nor does the fact that he (the vendee) was the uncle of David A. Waterman, prove that he intended to aid and assist him in defrauding his creditors. Relatives may, undeniably, trade with each other, as well as strangers." In Bump on Fraudulent Conveyances, page 56, it is said: "Relationship is not a badge of fraud. * * * Any relation which gives rise to confidence, though not a badge of fraud, * * * strengthens the presumptions that may arise from other circumstances, and serves to elucidate, explain or give color to the transaction."

Thus it will be seen, that the mere fact of relationship, without other facts and circumstances, affords no presumption of law against the *bona fides* of a sale from one to the other. It may excite suspicions, and may be considered with other evidence tending to impeach the transaction. As to the other part of the instruction, in the absence of any bankrupt law, or statute, to the contrary, the law is well settled that a debtor in failing circumstances, not seeking the benefit of the

general Assignment law, may prefer one creditor to another equally meritorious, if done in good faith. *Morris* v. *Tillson,* 81 Ill. 607; *Tomlinson* v. *Matthews,* 98 id. 178; *Goembel* v. *Arnett,* 100 id. 34; Bump on Fraud. Con. 183; Wait on Fraud. Con. sec. 390.

The case of *Phelps* v. *Curts,* 80 Ill. 109, is not to be understood as denying a failing debtor the right to prefer a creditor. In that case, the assignment was made with a view to the debtor's own advantage, in delaying his creditors an unreasonable time before his property could be appropriated to their benefit, and for the purpose of preventing a sacrifice.

The statute relating to assignments by debtors for the benefit of their creditors, and prohibiting preferences in such assignments, has no application to a case of this kind. Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by the sale of his property. That act applies only to conveyances of property to an assignee or trustee, in trust, to convert the same into money for the benefit of creditors of the assignor, which can now only be made under that law. *Hanchett* v. *Waterbury,* 115 Ill. 220.

Appellee's ninth instruction, which is complained of, in substance told the jury, that while fraud might be proved by circumstances, yet the appellee must have participated in, or have been a party to, the intent to defraud the creditors of Ward & Pierce, in order to invalidate his title to the goods. As a general rule, to render a sale or conveyance fraudulent as to creditors of the vendor, there must be mutuality of participation in the fraudulent intent on the part of both the vendor and the purchaser. (Bump on Fraud. Con. sec. 199; *Ewing* v. *Runkle,* 20 Ill. 448.) In order to impeach a conveyance of land for fraud, both grantor and grantee must be shown to have intended to commit the fraud as against creditors of the grantor. *Hatch* v. *Jordon,* 74 Ill. 414; *Gridley* v. *Bingham,* 51 id. 153; *Myers* v. *Kinzie,* 26 id. 36; *Grant*

v. *Bennett*, 96 id. 513. This will also dispose of the objection to the modification to the defendant's last instruction.

Appellee's eleventh instruction is claimed to be erroneous, and is as follows :

"The court instructs you (the jury,) that before you can find for the defendant, on the ground that the sale of the property in question from Ward & Pierce, to the plaintiff, was fraudulent, by a preponderance of the evidence, you are not permitted to guess or suspect or presume fraud, but must find it from the evidence, as you would any other fact."

It is urged that this instruction requires a preponderance of evidence to prove the existence of fraud, and that it requires the fraud to be found from the evidence, the same as any other fact. What has been said of appellee's fourth instruction disposes of the first objection. In support of the second objection, we are referred to the cases of *Reed* v. *Noxon*, 48 Ill. 323, and *Strauss* v. *Kranert*, 56 id. 254. The objectionable instruction in the first of these cases is not given, but the court say : "The jury are there told that fraud is not to be inferred, but must be proved like any other material fact. The jury might suppose from this, that fraud must be proven by direct evidence of a witness speaking from personal knowledge of the fraudulent intent." Here, the instruction is not thought to be liable to any such construction. It is true, as stated in that case, that fraud "must generally be proven where it exists, by showing such facts and circumstances as to justify the jury in inferring a fraudulent intent or motive." But such facts and circumstances, when proven, constitute evidence upon which the jury may infer fraud, and unless the facts and circumstances proved, in connection with all the other evidence, show fraud, the jury can not find it from the evidence.

The court, on behalf of the defendant, instructed the jury very fully and favorably to him. By his second instruction

the jury were told that the question for them to decide was, "Did Ward & Pierce fairly and honestly dispose of the stock of goods in question, or did they dispose of it in the manner they did, with the fraudulent design of disturbing, hindering, delaying or defrauding their creditors, and if so, did the plaintiff participate in such design; and in determining this question, it is the duty of the jury to take into consideration and carefully weigh and consider all the circumstances, including the relation of the parties, which are in evidence in this case; that fraud is said to be the judgment of the law on facts and intents, and the fact, if proven, that the firm of Ward & Pierce disposed of all their property, including the stock of goods in question, within a few days' time, and all the circumstances surrounding the said sales and transfers, being in evidence, it is for the jury to determine, from these facts and surrounding circumstances, the intent of making said sale and transfer; and if they believe, from said evidence, facts and circumstances in evidence, that said sale, transfer and conveyance of the stock of goods in question was made with the intent to disturb, hinder, delay or defraud William Young & Co., or the other creditors of said Ward & Pierce, and that the plaintiff had knowledge of and participated in such intent, then, in law, such sale, transfer or conveyance of these goods was a fraud upon the said Willliam Young & Co., as well as all other creditors of said Ward & Pierce, and the law in that case is for the defendant on that point."

The court also gave the following other instruction for the defendant:

"The jury are further instructed, that fraud is not generally proved by direct testimony of witnesses speaking from their own knowledge of the fraudulent intent, because parties intending to commit a fraud do not call witnesses to the. transaction. It may be proved by the surrounding facts and circumstances; and if, from the facts and circumstances sur-

rounding this case, as shown by the evidence, the jury believe the goods in question were sold or transferred to the plaintiff by the firm of Ward & Pierce, with the intent to disturb, hinder, delay or defraud William Young & Co. from collecting their debt against said Ward & Pierce, and that plaintiff had knowledge of and participated in such fraudulent intent, then they will find the title of the goods in question was in the defendant at the time they were replevined, provided it appears, from the evidence, that Young & Co. were creditors of Ward & Pierce at the time."

The instructions for the appellee, when considered in connection with these and other instructions for the appellant, can not be said to have misled the jury, by leading them to infer that fraud in the transaction could be proved only by direct testimony, and in this respect the case at bar is quite different from the cases cited. The other case, of *Strauss* v. *Kranert*, is not analogous to this. There, the court refused an instruction to the effect that fraud might be proved by circumstantial evidence as well as positive proof.

What has been said disposes of all the points which are deemed of sufficient importance to be specially considered. We think the instructions, taken as a whole, lay down the rules of law applicable to the facts of the case, with substantial accuracy. The facts, as already said, are, by the judgments of the circuit and Appellate courts, put beyond our consideration, and we have, in this case, looked into them only to determine if the instructions as given fairly submitted the issues to the jury. We think this was done, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*