## Andrew K. Haberer v. Frank W. Walzer.

1.  REPLEVIN—*Sufficient Possession to Sustain.*—Plaintiff bought live
stock and other personal property of a tenant on his farm who was
about to vacate his tenancy, left them on the farm, going there fre-
quently to attend them, and later hired a person for that purpose.
*Held,* that there was a change of possession sufficient to sustain an
action of replevin on the part of the purchaser, for the stock, when
execution upon a judgment against the vendor was levied upon it.

2.  EVIDENCE—*Note, Mortgage and Check in Payment, Admissible to
Show a Purchase Not Colorable.*—Where a party assumes and pays a
chattel mortgage in payment of a purchase, but takes an assignment of
the note to himself instead of having the mortgage released, the note,
mortgage, and the check with which he paid the holder thereof, are
admissible in evidence to show that the purchase was not colorable,
where such assignment and giving of check were a payment of the
debt and operated to discharge the mortgage.

3.  FRAUD—*Must Be Proved.*—Fraud can not be presumed, but must
be proved by a preponderance of the evidence.

Replevin.—Appeal from the Circuit Court of Whiteside County; the
Hon. FRANK D. RAMSAY, Judge presiding.  Heard in this court at the
October term, 1902.  Affirmed.  Opinion filed April 21, 1903.

F. E. ANDREWS and G. A. STULTZ, attorneys for appellant.

C. L. & C. E. SHELDON, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On November 30, 1901, John N. Harpham recovered a
judgment by confession against Tribbey J. Stickell in the
Whiteside Circuit Court, and sued out an execution upon
said judgment and placed it in the hands of Andrew K.
Haberer, sheriff of said county.  On December 26, 1901,
the sheriff levied said execution upon certain horses, cattle,
farming utensils, hay, straw and oats, as the property of
Stickell.  The next day Frank W. Walzer brought this
action of replevin against the sheriff to recover said prop-
erty, claiming to own the same.  Pleadings were filed
which raised the issue whether plaintiff or Stickell owned
the property.  Upon a trial the issues were found for
plaintiff, and he had judgment, and defendant appeals.

Plaintiff lived in Sterling and owned a farm in the town of Hume in Whiteside county. Stickell was his tenant under a lease expiring March 1, 1902. In the preceding fall it was decided that Stickell should leave the farm at the end of that term, and that plaintiff and plaintiff's brother would thereafter conduct it. Plaintiff claims that about the last of September, 1901, he bought from Stickell most of the horses, cattle, farming tools, and all the hay, straw and oats he had on the farm, for $1,060, then paid or assumed. Shortly thereafter plaintiff bought about thirty-four head of cattle elsewhere, and placed these also on the farm. Defendant as sheriff levied the execution in question upon all the property plaintiff bought of Stickell and also upon a part of the stock plaintiff had bought elsewhere. It is conceded plaintiff owned the cattle he had bought elsewhere, and was entitled to recover them in this action. But as to the property plaintiff bought of Stickell defendant claims, first, that the transaction was colorable only, and for the placing of Stickell's property beyond the reach of his creditors; and, second, that if plaintiff bought and paid for the property in good faith, still the sale was void and fraudulent in law as to creditors of Stickell for the lack of a change of possession.

We regard the proof as clear and uncontradicted that plaintiff bought the property of Stickell and paid for it. There is nothing to indicate the price was other than its full value. There is nothing to show that when plaintiff bought he knew Stickell owed Harpham, or owed any other debts except one to himself which was settled in this transaction, and a note for $500 secured by a chattel mortgage on part of the property plaintiff bought, which note plaintiff assumed, and took up before the levy. We find nothing in the proof indicating plaintiff was acting in bad faith or in fraud of Stickell's creditors.

After plaintiff bought this property he came to the farm often, sometimes daily, sometimes two or three times a week, and looked after his stock when there, but for a time all further care, if any was given the stock, seems to have

Haberer v. Walzer.

been taken by Stickell. About the last of October or first of November, plaintiff hired one Williams, and sent him to the farm with directions to take possession of all the personal property on the farm, to feed and care for the stock, to build about sixty rods of new fence, repair old fences, dig out stumps, cut down bushes, husk corn, etc. Williams went to the farm, took care of the stock, and did this work for about a month. He was exclusively in plaintiff's employ and under plaintiff's direction. He boarded with Stickell's family, but plaintiff paid for the board. While Williams was thus engaged Stickell was absent most of the time, running a corn sheller and shelling corn for others. Why Williams was directed to husk corn does not appear. Plaintiff was entitled to a share of the crop on the farm for his rent, but the lease was not in evidence, and there is nothing to show who was required to husk the corn by the terms of the contract. All the other work Williams did was to take care of the personal property on the farm, and prepare the place for the farming operations of the next year. About the first or middle of December Williams left. Plaintiff then hired one Moresy to work for him on the farm all winter. Moresy took care of this property and did other work for plaintiff a week or ten days and then became dissatisfied with his earnings, and left a few days before the levy. From that time on until the levy plaintiff came to the farm every two or three days and sometimes daily, and when there looked after all the stock, including that bought of Stickell, counted them to ascertain they were all there, salted them, saw that they had sufficient water in the tank, that none of them were sick, etc. The stock seems to have been running out at that time, and it is not shown that Stickell did anything to them after Moresy left, or indeed that Stickell had had anything to do with plaintiff's personal property on the farm after Williams came there to take possession and charge of it the last of October or the first of November. Stickell's family still lived in the house on the farm, and Stickell was there in person more or less, and

it may be his lease gave him the right to the exclusive
possession of the land till the first of March following, but
these facts do not prove plaintiff did not have possession
of his own personal property on the farm.  Certainly he
was in possession of the thirty-four head of cattle he bought
elsewhere and brought to the farm that fall and kept there
till the levy, and his possession of them was of the same
character as his possession of the property bought of
Stickell.   Whether the lease allowed him to have his stock
and other personal property on the farm, or whether it was
kept there under some later or other arrangement, does not
appear and is not material.   The fact seems to be that
Stickell had substantially completed his farm work for that
season, was going to leave on March first, and was working
for himself elsewhere, and plaintiff bought much of Stick-
ell's property, brought other stock there, and had his men
care for his stock and do work on the farm preparatory to
carrying on the place the next year, and all of this was
with the entire acquiescence of Stickell.  We would not
be warranted in disturbing the conclusion of the jury that
plaintiff had possession of the personal property he bought
of Stickell.

Before the levy plaintiff paid the holder of the chattel
mortgage the sum due him, but instead of having the
mortgage released he took an assignment of the note to
himself.   It is argued the court erred in admitting in evi-
dence for plaintiff the note, the mortgage, and the check
which plaintiff paid the holder thereof.  If, as defendant
contends, this was a payment of the debt and operated to
discharge the mortgage, plaintiff had a right to introduce
these instruments to show that the purchase was not color-
able as defendant asserted, but there was in fact such a
debt as he testified he had assumed as part of the purchase
price of the property, and that he had paid it as agreed.
The court at defendant's request instructed the jury in
effect that this was a payment of the debt by plaintiff and
that they should not take the chattel mortgage into con-
sideration in arriving at their verdict.   There was no error

in admitting in evidence these instruments, and it is unnecessary to determine plaintiff's further contention that if it was not payment, he could recover in this suit by virtue of the mortgage.

It is argued the court erred in instructing the jury at plaintiff's request that fraud can not be presumed, but must be proved by a preponderance of the evidence. This was a correct statement of the law. (Wright v. Grover, 27 Ill. 426; Schroeder v. Walsh, 120 Ill. 403.) The jury could not have understood therefrom that fraud must be proved by direct instead of circumstantial evidence, for the instruction does not say or imply anything of that kind. The jury could not have understood that a retention of the possession by the seller was not proof of fraud, for the court, after a modification which did not change the meaning, gave an instruction requested by defendant, as follows:

" The court instructs the jury that any sale of personal property, when it is permitted to remain with the vendor, if it is of that character or quality of property that it is capable of being removed or having a change in the possession of it made, and the purchaser does not take possession thereof, is fraudulent in law as to creditors and subsequent purchasers, notwithstanding the sale may be in good faith and for a valuable consideration."

Another instruction of like import was given. We have considered the other rulings of which complaint is made and find no reversible error in the record.

The judgment is therefore affirmed.