CATHARINE MORTIMER

*v.*

LILLIE L. McMULLEN.

*Opinion filed April 24, 1903.*

1. FRAUD—*fraud must be established by a preponderance of evidence.* One who assails a note and mortgage upon the ground of fraud has the burden of establishing such fraud by a preponderance of the evidence.

2. SAME—*one desiring to rescind contract for fraud must act promptly.* One desiring to rescind a contract for fraud must act promptly upon discovering the fraud and tender back what he has received under the contract.

*Mortimer* v. *McMullen,* 102 Ill. App. 593, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

The following is a statement of the facts in this case made by the Appellate Court in deciding the case:

"Appellee filed in the circuit court her bill to foreclose a mortgage, made by appellant to secure her note bearing date July 28, 1898, for $2610.00, payable to Martin D.

and Milton D. Jones one year after date, with interest at seven per cent per annum. The note recites that it is secured by real estate in Cook county, Illinois. Appellant, October 30, 1899, answered, denying that she made either the note or the mortgage described in the bill. April 16, 1901, appellant filed an amended answer, in which she set up that the said note and mortgage 'were procured from her by fraud, circumvention, undue influence and surprise.'

"Appellant also filed a cross-bill, in which she set up that the note and mortgage were obtained from her by surprise, fright, duress and perfidy, and that 'she did not know what papers she signed, but whatever she did sign was through fear and despair and to get rid of said Jones brothers and their lawyer, and their torture.' Appellant, by her cross-bill, prayed that all evidence of indebtedness against her be canceled upon payment by her of $300.00. The cross-bill having been answered, the cause was referred to a master to take testimony and report. The master's report was filed March 22, 1901. The master found that appellant, being, July 28, 1898, indebted to Martin and Milton Jones, executed to them the note and mortgage described in the bill filed by appellee; that, before the maturity of the note, the payees thereof sold the same to appellee for the full value of the same, then paid by said appellee to Milton and Martin Jones; that the claim of appellant, that she was induced by fraud and duress to sign said note and mortgage, is not sustained by the evidence, and that the prayer of the cross-bill should be denied, and the prayer of the complainant in the original bill be granted."

The court rendered a final decree of foreclosure, overruling the exceptions to the master's report, finding the amount due according to the terms of the note, secured by the mortgage, and ordering sale of the premises. An appeal was taken from the decree, so entered by the circuit court of Cook county, to the Branch Appellate Court

for the First District, and there the decree was affirmed. The present appeal is prosecuted from the judgment of affirmance, so entered by the Appellate Court.

A. K. MANNING, (HARVEY B. HURD, of counsel,) for appellant.

CHARLES M. MACLAREN, for appellee.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

After a careful examination of the evidence, we are unable to say that the lower courts erred in the conclusions reached by them in this case. The testimony sustains the finding of the master, that the execution of the note and mortgage, to foreclose which the present bill was filed, was not obtained by fraud and duress.

Fraud must be proved and will not be presumed. (*Swift* v. *Yanaway*, 153 Ill. 197). Fraud being alleged, it must be established by a preponderance of the evidence. (*Merchants' Nat. Bank* v. *Lyon*, 185 Ill. 343). Where a party assails a transaction upon the ground of fraud, the burden of proof is upon him to show the fraud. (*Schroeder* v. *Walsh*, 120 Ill. 403). Fraud may be proved by circumstances, but it is not thereby established unless the circumstances proven are so strong, as to produce a conviction that the charge of fraud is true. (*Bryant* v. *Simoneau*, 51 Ill. 324). Preponderance of evidence means the greater weight of evidence, and where the evidence, in its weight, is equally balanced between the contending parties, the one holding the affirmative of the issue must fail. (*Schroeder* v. *Walsh, supra*). "If the evidence is so conflicting that no conclusion can be reached, the transaction must be sustained, upon the principle that the burden of proof is on the party who assails it, and if he does no more than create an equilibrium, he fails to make out his case. * * * What amount or weight of evidence is sufficient proof of a fraudulent intent, is not a matter of legal definition.

If the evidence is admissible, as conducing in any degree to the proof of the fact, the only legal test, applicable to it upon such an issue, is its sufficiency to satisfy the mind and conscience, and produce a satisfactory conviction or belief. (*Carter* v. *Gunnels*, 67 Ill. 270). The proof, however, must be satisfactory. It must be so strong and cogent as to satisfy a man of sound judgment of the truth of the allegation." (*Schroeder* v. *Walsh, supra*).

In the case at bar, Martin D. Jones and Milton D. Jones held a judgment note for $2500.00, executed to them by the appellant, Catharine Mortimer, and her nephew, Edson J. Davis. Judgment by confession was entered up upon this note against Davis and appellant in July, 1898, and execution was issued upon the judgment. As we understand the record, this judgment was for the sum of $2610.00, including interest, and costs, and the attorney's fee, allowed by the terms of the judgment note. On July 28, 1898, Martin D. and Milton D. Jones, who are brothers, and brothers-in-law of Davis, went to the appellant, and told her that they had obtained judgment against her, and her nephew, upon the judgment note in question, and that, if she would execute to them a note and mortgage to secure the debt represented by the judgment, they would release the judgment, and not attempt to enforce the execution, which had been issued thereon, against her property. She preferred to execute the note and mortgage rather than have her property sold under the execution upon the judgment. There is no question under the testimony as to the fact, that she did execute the note for $2610.00, and the mortgage securing the same, which is sought to be foreclosed herein. Either the next day, or a few days after she executed the note and mortgage to Martin D. and Milton D. Jones, they released the judgment upon the record, and filed in the proper place a formal written discharge of such judgment. Appellant claims that, when Martin D. and Milton D. Jones came to her and told her that they had a

judgment against her, which was a lien upon, and could be enforced against, her property, she was surprised, and was induced to believe that she was obliged to execute the mortgage, in order to save her property. We do not deem it necessary to enter into an analysis of the evidence, and of the statements of the different witnesses in reference to the conversations, which took place between the parties at the time of the execution of the mortgage. It is clear to our minds, that she was not induced by any fraud to execute the mortgage, nor was she under any duress when she did so. The allegation in her cross-bill, and the purport of her testimony, are that she executed the mortgage, in order to escape the persecution of Martin D. and Milton D. Jones, and did it through fear and despair, and in order to get rid of them, and be free from their presence. After July 28, 1898, when she executed the note and mortgage, she was not under the influence of Martin D. and Milton D. Jones for more than a year. During that time, she took no steps to have the note and mortgage set aside, as having been obtained by fraud and duress. On the contrary, some time in February or March, 1899, after the execution of the mortgage, she was informed, both by letter and in person, by one or both of the Jones brothers, that they desired to sell the mortgage to a third party, and they did actually thereafter sell it to the present appellee, Lillie L. McMullen. The appellant, when informed by them in February or March, 1899, of their desire to transfer the mortgage to a third party, loaned to them her abstracts of title to the property in question, in order that the proposed purchaser of the mortgage might be satisfied as to the title to the property. She manifested, at the time of this loan of the abstracts, no dissatisfaction with the mortgage, and made no complaint that it had been executed. Not until the filing of the answer in this case to the original bill, and on the filing of the cross-bill herein, did appellant set up any claim

that she had been induced by fraud and duress to execute the mortgage. After its execution, and after she was free from the presence and influence of the parties, at whose suggestion she had executed it, she made no attempt to repudiate her act in this regard, or to tender back what she had received in consideration for the execution of the mortgage. That is to say, she retained the benefit of the discharge of the judgment against her, and the consequent release of her property from the lien of the judgment, and made no effort to place matters in the same condition, in which they were before the note and mortgage were executed. "It is a familiar rule, and settled by a long line of authorities, that, where a party discovers that fraud has been practiced upon him in the making of a contract, it is his duty at once to repudiate the contract and tender back what has been received by him under its terms, so that all the parties may be placed, as near as possible, in the position occupied before the contract was consummated.". (*Brady* v. *Cole*, 164 Ill. 116).

In *Naugle* v. *Yerkes*, 187 Ill. 358, we held that "one who desires to rescind a contract for fraud must act promptly, and at once tender back what he has received under the contract, and, if he remains silent or in any way recognizes the validity of the contract after discovering the alleged fraud, he is bound thereby." Here, there was no such prompt action and no such tender as are required by the rule thus announced.

It is claimed, however, by appellant, that a fraud was practiced upon her, in order to induce her to execute certain notes, which lay back of the judgment note, and the note secured by the mortgage already referred to. In regard to this branch of the case the evidence is conflicting, and we are not able to say that it preponderates in favor of the charge of fraud.

Edson J. Davis, already mentioned, married the sister of Milton D. and Martin D. Jones. In 1894, or perhaps at

an earlier date than that, Davis was an employe of one Grant McPherson in Kewanee, and, while in the service of McPherson, embezzled $3200.00, and was arrested for the crime. Milton D. and Martin D. Jones, the brothers of his wife, went to Kewanee, and secured his release from arrest by turning over property and money of their own to McPherson, and satisfying his debt against Davis. Davis gave to his brothers-in-law his notes for some $2500.00 to secure them for the amount, advanced in his behalf and to release him from arrest. This indebtedness was subsequently reduced to $2200.00, evidenced, as we understand the testimony, by two notes, one for $1000.00, and one for $1200.00. On July 1, 1897, Davis was a partner with two doctors, named Milnamo and Post, in the ownership and operation of a drug store in Chicago, he owning one-third interest therein, and they two-thirds. According to the account given of this matter by Martin D. and Milton D. Jones, doctors Milnamo and Post were determined to sell out their interest in the drug store, and get rid of it, even at a sacrifice. Davis requested his brothers-in-law to buy out the interest of his partners. They did finally purchase two-thirds of the interest of the doctors, and, after their purchase of it, the drug store continued to be kept up in the name of Davis, as it had been for some time prior thereto. The brothers-in-law were willing to purchase the interest of Davis' partners in the drug store, provided he would give them security for $1000.00 of the $2200.00, which he owed to them. Davis then went to his aunt, the present appellant, and asked her to sign with him a note for $1000.00, payable to the order of Martin D. and Milton D. Jones. Mrs. Mortimer executed the note with her nephew, and it was turned over to the brothers-in-law, and they purchased the interest of the partners of Davis in the drug store. Martin D. and Milton D. Jones say that their only object in doing this was to save the drug store, or a position in the drug store for Davis, their sister's husband.

He was receiving at that time a salary of $60.00 a month,. and one-third of the profits of the business. They were unwilling to purchase an interest in the store, unless he obtained security for $1000.00 of his indebtedness to them, as already stated.

According to the statements of appellant and Davis, Davis told his aunt that he wanted to execute the note for $1000.00 to his brothers-in-law for the purpose of obtaining that much money from them, in order himself to buy out the interest of the partners in the drug store. It seems that, when he purchased his original one-third interest in the store, he had borrowed some $300.00 from his aunt, and, out of the profits of the business, had paid it back to her, and the theory is, that she loaned the $1000.00 upon the belief that the business, having already proved successful, would enable her nephew to return the $1000.00 out of the profits of the business, when the whole of it should be owned by himself. Davis admits. in his testimony that, when he told his aunt that he wanted the $1000.00 for the purpose of purchasing the interest of his partners for himself, he told her a falsehood, but says that he told her such falsehood at the request of Martin D. Jones. Martin D. Jones denies what is said by appellant and Davis upon this subject. He and Milton Jones claim that Davis and Mrs. Mortimer executed the note for $1000.00 to them for the reasons. stated by them. We are unable to say, in the conflict that exists in the testimony upon this subject, that the account of it, given by Milton D. and Martin D. Jones, is not correct.

Subsequently, Mrs. Mortimer desired to borrow $300.00 to pay off a mortgage upon some of her property, and applied to Davis for the money. Davis was unable to furnish it to her, but said that he would borrow it from Martin D. and Milton D. Jones, his brothers-in-law. There is some dispute as to whether the $300.00 was loaned to Davis to be turned over to his aunt, or whether it was.

loaned directly to his aunt, but we regard this as immaterial. Martin D. and Milton D. Jones said that they would advance the $300.00, provided Davis would furnish security for the remaining $1200.00 which he owed them, and thereupon a note for $1500.00 was executed to Martin D. and Milton D. Jones by Davis and his aunt, which was made up of the $1200.00 due to them from Davis, and the $300.00 advanced by them for the benefit of the appellant. Davis says that the $1500.00 was made up of the note for $1000.00 and the $300.00, which was advanced for his aunt's benefit, but does not know why the note was made out for $1500.00, instead of $1300.00. We have been referred to no statement in the evidence of appellant, to the effect that the note for $1500.00 included the note for $1000.00.

Shortly after the execution of the note for $1500.00, Martin D. and Milton D. Jones suggested to Mrs. Mortimer that they preferred to have one note for $2500.00, instead of two notes for $1000.00 and $1500.00 respectively, and thereupon the two notes, one for $1000.00 and one for $1500.00, were surrendered and destroyed, and appellant and Davis executed to them a new note for $2500.00, which was the judgment note already referred to. At an early stage in the taking of testimony, before the master, the appellant denied that she had ever executed the note for $2500.00, but we think that the proof is overwhelming that she did execute the note, and that, at the time when she executed it, she made no objection to doing so. In this case, her counsel has admitted that the signature to the note for $2500.00 is that of the appellant. If there was any fraud, as charged by Davis, but not by appellant, in failing to return the note for $1000.00 when the note for $1500.00 was executed, it is very singular that the appellant consented to execute a note for $2500.00, because it is admitted that the note for $2500.00 was made up of the two notes, one for $1000.00 and one for $1500.00. The fact, that a new note for

$2500.00 was willingly executed by the appellant, confirms the statement of Martin D. and Milton D. Jones, that the two notes, lying back of the note for $2500.00, represented different debts, and not to any extent the same debt.

After the brothers-in-law had purchased the interest of the doctors in the drug store, and had thereby become partners with Davis, Davis appropriated moneys that were paid into the store for the benefit of some express company. In other words, he embezzled $271.00 that belonged to the express company, and for which the company held his receipts. Davis was again threatened with arrest, and his brothers-in-law again came to his rescue, and paid to the express company the amount of his defalcation, but insisted that, in consideration thereof, and of certain additional amounts paid to him, he should sell out his interest in the store to them, which he did. This occurred in July, 1898. The evidence shows, that Davis was a man of dissipated habits, and addicted to betting on horse races. After this second defalcation, his brothers-in-law not only insisted upon his leaving the drug store as a partner, but they then took steps to enter up judgment on the judgment note, which they held.

While it may be true, upon a review of all the evidence, that the appellant was induced by her affection for her nephew—having no children of her own—to sign these notes for him, in order to save him from disgrace, yet we are unable to say that any such influence was brought to bear upon her by the parties, to whom she gave the notes, as amounts to any fraud or duress.

We are not convinced that we ought to disturb the decree of the circuit court, or the judgment of the Appellate Court, affirming that decree. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*