85    47
s185s445
85    47·
92   1493

## Charles E. Johnston v. Abraham M. Hirschberg.

1. FRAUD—*Burden of Proof.*—The burden of proving fraud is on the party alleging it. It can not be presumed, but must be proved by evidence reasonably sufficient to establish it.

2. SAME—*Mutuality.*—To render a sale or conveyance fraudulent as to creditors of the vendor, there must be mutuality of participation in the fraudulent intent on the part of both the vendor and the purchaser.

3. INSTRUCTIONS—*Abstract Principles of Law.*—It is not error to refuse an instruction announcing a mere abstract principle of law.

4. VERDICTS—*Upon Conflicting Testimony.*—The verdict of a jury upon conflicting testimony is conclusive if there is substantial evidence to support it and the instructions are without error.

Trespass, for taking personal property. Trial in the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Affirmed. Opinion filed October 12, 1899.

H. C. FULLER, attorney for appellant; JAMES H. SEDGWICK, of counsel.

ISAAC C. EDWARDS and ISAAC J. LEVINSON, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On October 17, 1895, Gans Brothers and Rosenthal sued out of the County Court of Peoria County an attachment

against Isaac D. Hurwitz for the sum of $404.93, and placed the same in the hands of Charles E. Johnston, the sheriff of said county, and the latter seized thereunder a quantity of tobacco·in the possession of Abraham M. Hirschberg, at his cigar factory in the city of Peoria, and also other tobacco in a storeroom in another building, all which tobacco Hirschberg claimed to own. The sheriff removed the property, and it was never returned to Hirschberg. On January 11, 1896, Hirschberg brought this action of trespass against Johnston, for seizing and carrying away said tobacco and converting and disposing of the same. Upon issues joined there was a jury trial, a verdict and a judgment for defendant, which judgment was reversed in Hirschberg v. Johnston, 74 Ill. App. 41, for errors in instructions. Upon a second trial plaintiff recovered a verdict, and a judgment for $1,650, from which judgment defendant prosecutes this appeal.

Defendant filed six pleas. The first was not guilty. The second averred that the goods and chattels in question were the property of Hurwitz, and set up said attachment writ against Hurwitz, and the seizure of said property thereunder, and that this was the trespass complained of. Upon these pleas issues were joined. To the third, fourth, fifth and sixth pleas a demurrer was interposed and sustained. Defendant then filed amended third, fourth, fifth and sixth pleas, and plaintiff demurred thereto, and the demurrer was sustained. The record shows defendant elected to abide by said amended pleas; and the action of the court in sustaining said demurrer thereto is assigned for error. We are of opinion no error in that regard appears: First, the supposed error is not argued by appellant in his briefs here, and it is therefore waived; second, the third, fourth and fifth amended pleas are certainly bad. Each presents a defense as to a part only of the goods and chattels in question, and then prays judgment of the entire cause of action. The sixth amended plea is contradictory, double, confusing and uncertain. It first alleges that all the goods described in the declaration were the property of Hurwitz (of which defense

defendant had the benefit under the second plea).   It then alleges that certain other parties claimed to own certain portions of said goods, particularly described, and that by certain judicial proceedings, said goods, particularly described, were adjudged to them, and that as to said goods particularly described plaintiff is barred from maintaining his action; and that the seizure of said goods particularly described (which the plea had just admitted were only part of the goods described in the declaration), was the only trespass alleged in the declaration.

Hirschberg proved, without any direct contradiction, that he had negotiated with Hurwitz, a cigar manufacturer in Peoria, for a part of his stock, some time before he bought, and offered to pay him seventy per cent of the invoice price; that afterward Hurwitz sold part of his stock to one Meirs, and removed to a new location; that the negotiations were renewed, and on October 4, 1895, Hirschberg bought of Hurwitz a part of his remaining stock; that they weighed the tobacco then bought, and it came to 1,993 pounds; that the bills for said tobacco were examined and it was found to have cost between $1,600 and $1,700, and seventy per cent thereof came to $1,137.50; that he gave Hurwitz therefor his check on the German American National Bank for $800, and his note for $337.51, due in thirty days, with interest at six per cent; that the check was duly paid at the bank; that Hurwitz assigned the note to M. J. Cohen as collateral security for $275, which Hurwitz owed Cohen; that Hirschberg paid the note to Cohen shortly before maturity, and the latter deducted the $275, and paid the balance to Hurwitz.   Hurwitz was at this time making cigars in a room on the second floor of a building on Washington street, which room he rented from Cohen, who had control of the entire building, and occupied most of it for his business.   As soon as Hirschberg made the arrangement to buy the tobacco he rented a first floor front room on Lincoln avenue (a mile and a half or two miles from the shop of Hurwitz), as a location for a cigar factory.   As soon as he had paid for the tobacco he moved it to that place, except

two packages, which were so badly broken they could not easily be removed. He made an arrangement with Cohen to store those packages in a storeroom occupied by Cohen on the third floor of the Washington street building, and did remove and leave them there, and they remained there till the sheriff seized them under said attachment writ. On October 5th, the next day after Hischberg bought and removed the tobacco, he applied for and obtained a government license to manufacture cigars, and a certificate of registry, and put a sign upon the front of the Lincoln avenue building, giving his name and the number of his shop and the number of his district. The check, the note, the bill of the goods, the bill of sale thereof and the government certificates in due form, were all in evidence. An attempt was made to show the goods were moved to Lincoln avenue in the night time, but this failed. The goods were moved late in the afternoon by daylight. When they reached the building previously rented, the owner thereof and his wife, who lived upstairs, were away, and Hirschberg had not obtained the key. He unloaded the tobacco on the sidewalk, and left it there in charge of a man till the owner of the building came home in the evening, and then moved it in. The entire transaction was as open and public as such a business could be conducted, and there is no direct evidence to rebut or overcome plaintiff's proofs. No doubt can be entertained that the parties observed all the outward forms of a sale of and payment for the goods and a complete change of possession. Hirschberg then made some tables and procured the necessary appliances for making cigars; purchased a lot of cigar boxes from a man engaged in making them; caused his own number to be put upon them; and after some delay hired either one or two cigar makers; had some preliminary work done preparatory to making cigars, and began their manufacture. The proof shows a man will make from fifty to two hundred and fifty cigars per day, depending upon the kind of work to be done. Hirschberg had three hundred and fifty cigars made when, on October 17th, the thirteenth

day .after he purchased the tobacco of Hurwitz, the sheriff seized the goods at Hirschberg's shop on Lincoln avenue, under the writ against Hurwitz. The tobacco left in Cohen's storeroom the sheriff seized a few days later under the same writ. It appears that various creditors of Hurwitz thereafter seized the stock he still had at his factory on Washington street, and his tools, and he was thereby driven out of business, and, as a witness for defendant stated, Hurwitz then "failed for several hundred dollars."

Under this evidence plaintiff was clearly entitled. to recover the value of the property taken unless the transaction was in fact colorable only, or was conducted with the intent, on the part of Hirschberg as well as Hurwitz, to cheat and defraud the creditors of Hurwitz. (Schroeder v. Walsh, 120 Ill. 403.) For this proof the defense relied upon various circumstances, mostly derived from the direct and cross-examination of Hirschberg. Mrs. Hurwitz was a sister of Hirschberg, and Hirschberg had boarded and roomed at Hurwitz's home most of the two years he lived in Peoria. Hirschberg deposited the $800 in the bank the day he delivered Hurwitz the check for that amount. He had never before made deposits of any large sums in any bank, and but few small ones. He never owned any real estate. During the preceding three or four years he had worked for various persons and firms in several different kinds of business in a number of different towns at $7.50, $9, $11.50, and $12.50 per week, and $55 per month; had lived very economically, and had frequently been out of work for a short time. Hirschberg had clerked in a cigar store, but he had never made cigars. The cigar business was dull and had been for two years. The room he rented was sixteen feet square and not large enough for the business he might have conducted with the amount of tobacco he bought. It is argued he could not have saved this amount of money; that if he had had so large a sum it would have been in some bank; that he must have known that Hurwitz was in debt, and this tobacco not paid for. There is no proof, however, that he was acquainted with Hurwitz's

business affairs or debts, or knew the tobacco was not paid for. He may have supposed Hurwitz was selling the tobacco to raise money to pay his debts. Indeed, there is no proof Hurwitz did not use the $800 in payment of his debts. That was the use to which Hurwitz put the note Hirschberg paid him.

Hirschberg testified he had the money, and that he made it when he was in the saloon business for fifteen months in Burlington, Iowa, prior to the time covered by defendant's inquiries, and that from that time on he always had a sufficient sum of money with which to have made this purchase. He produced a witness, Pinko, who had seen him several times with a roll of bills, and had twice borrowed money of him, the last sum being $120, which he paid back to Hirschberg by a check which was in evidence, and was dated October 4, 1895, and put through the Peoria clearing house and paid the same day, which was the day Hirschberg made the purchase of Hurwitz. It can not be supposed Pinko drew this check and put it through the clearing house, and had it paid out of his bank account at that date, when he owed Hirschberg nothing, simply in order to help manufacture false evidence for Hirschberg to use years afterward. No doubt Hirschberg received $120 of his own money from that source that day. Hirschberg claimed to have been for some time hunting for a suitable business in which to invest his money. Stein, a merchant tailor, testified that a few months before October, 1895, Hirschberg told him he had some money and wanted to go into some business, and that at his request Stein took Hirschberg into his employ that he might learn his business; that Hirschberg worked for him about two months and did not like the business; and that while with him Hirschberg investigated as to the price of goods and amount of capital it would take to run the business. If the cigar business was dull, as defendant proved, then the act of Hurwitz in selling, and of Hirschberg in buying, for seventy per cent of the cost price, does not subject the transaction to as much suspicion as it might if the business had been prosperous. Indeed, this

Johnston v. Hirschberg.

tends to show the prudence and caution of a genuine buyer. If the parties had been arranging a mere colorable transaction, and Hurwitz remained the real owner, as is here argued, they would have been much more likely to make the apparent consideration the cost price of the goods or more. A witness for the defendant testified the property taken by the sheriff from Hirschberg was worth $2,000, and was a staple article for which there was a ready market value. If so, defendant is all the more subject to the charge which the evidence supports, of making an excessive and oppressive levy in seizing it all upon a writ for $404.93. There are several other circumstances in evidence relied upon for and against plaintiff's title to the goods, but we think we have discussed the evidence sufficiently to show that we would not be warranted in holding that it fails to support the verdict. If the testimony of the plaintiff was true he was entitled to recover, and while there are some circumstances casting suspicion upon the transaction, they only create suspicions. The jury believed plaintiff, and we can not say they erred in doing so.

We are of opinion that the court did not err in the rulings upon evidence discussed by counsel. Objections were sustained to the answers of defendant's witness Waller to several questions. An examination of his entire deposition in the record shows he spoke in the main from hearsay, and that the several rulings were correct. In an answer to which the court sustained an objection, Waller stated Hirschberg had been traveling about from pillar to post, had no money or property to speak of, and on October 1, 1895, admitted he owned no real estate. Waller had already testified he never met Hirschberg, but saw him in court in 1897. It is manifest the answer above stated merely repeated what some one else told him. The court below properly sustained an objection to Waller's description of the room on Lincoln avenue, for he had already stated he only saw it in 1897, and that his only knowledge it was in the same condition as when Hirschberg occupied it in October, 1895, was that the landlord told him so. The

landlord, French, had been upon the stand, and defendant failed to prove by him that the room was in the same condition in 1897 as in October, 1895. After Waller had testified he had had no practical experience as a cigar maker, it was proper for the court to sustain objections to questions put to him on the assumption he was an expert in that business. The court was not bound to admit a memorandum from the books of the bank, showing Hurwitz' bank account. If competent at all, the books should have been produced. This was not even a copy from the book of original entry, but from the ledger, itself a copy. The schedule made by Hurwitz on October 24, 1895, was a declaration by the seller long after the sale, and could not be used to affect the buyer's title. If the financial condition of Hurwitz on October 24th was material, Hurwitz and others could have been called to testify thereto. Miller's testimony that Hirschberg "acted to me as though he was pretty near busted" was properly excluded. That was the conclusion of the witness, who should have stated facts only. The other evidence excluded was of like character.

Plaintiff's third instruction is subject to criticism in making plaintiff's right to recover turn upon his ownership of the property, overlooking the defense set up that he bought it with intent to cheat and defraud the creditors of Hurwitz, in which case they could assail a title good as between Hirschberg and Hurwitz. But the effect of a fraudulent intent and lack of good faith in the purchase was stated in plaintiff's fourth, fifth, sixth and eighth instructions, and in instruction "Bm" given for defendant. Several of defendant's refused instructions were abstract propositions of law, and therefore properly refused. Others made prominent a single item of evidence disconnected from the rest. Others were contained in the instructions given. The fifth implied plaintiff took possession of only part of the property, and the evidence did not justify such an assumption. We find no substantial error in the rulings upon the instructions. As a series they seem to state with sufficient fullness the law governing the case. The judgment is affirmed.