# CASES

### IN THE

# APPELLATE COURTS OF ILLINOIS.

---

## FIRST DISTRICT—MARCH TERM, 1900.

---

Mary A. Corbett and John Corbett Company v. Nathan Greensfelder, Trustee.

| 92 | 491 |
|---|---|
| s190s | 565 |

1. FRAUD—*Charges of, to be Sustained by Proof.*—Charges of fraud must be sustained by evidence; a mere suspicion of fraud is not sufficient.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed and remanded with directions. Opinion filed December 4, 1900. Rehearing denied January 15, 1901.

ROBLIN & SICKLESTEEL, attorneys for appellants.

ROSENTHAL, KURZ & HIRSCHL, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.
Appellee, as trustee in bankruptcy of John Corbett, the husband of Mary A. Corbett, filed his bill in the nature of a creditor's bill for the recovery of a stock of merchandise claimed to have been conveyed by John Corbett in fraud of his creditors. It is alleged that said Corbett had, previous to July 16, 1898, carried on a general merchandise business, and that on that date he conveyed his whole stock in trade to one Julius Guettel; that Guettel carried on the business

until September 7th following, and then conveyed it to appellant Mary A. Corbett; that subsequently the John Corbett Company was incorporated and Mrs. Corbett conveyed thereto the stock in controversy. Guettel received only $300 paid down upon the sale to Mrs. Corbett, but testified that he expected to receive in full the $2,800 which she agreed to pay for said property, and that he more than made up out of the stock while he owned it, the difference between the $3,217.50 which he paid for it, and the $2,800 for which he sold it to Mrs. Corbett. Of the money received by John Corbett from the sale to Guettel, about $800 was paid to his landlord in settlement of liability under a lease, and $2,000 was turned over to Mrs. Corbett, who seems to have used the same principally in paying certain of her husband's debts. It is asserted by appellants that this money was not applied on liabilities, real or pretended, from John Corbett to his wife, but was used by her in payment of his own direct liabilities. The remaining $400 of the money received from Guettel was retained by Corbett for his own use.

Considerable space is taken by appellee's counsel in the effort to sustain the proposition that the evidence tends to show John Corbett to have been for a long time prior and at the time of the transfer to Guettel a "fraudulent trader." Whether this be true or not, the material question here is, whether the sale to Guettel was made in good faith for an actual consideration. If Guettel acquired a valid title to the merchandise in controversy, then no one has a right to question any subsequent disposition of it which he might choose to make. He had a right to sell it to Mrs. Corbett or any one else, upon such terms as he might choose, and such purchaser would acquire a good title. The evidence relied upon as tending to show that the sale to Guettel was not made in good faith, but was a mere nominal transfer fraudulently made for the purpose of defrauding creditors, is that the stock was estimated as worth $6,000 or $7,000, but was sold to Guettel for about forty-five cents on the dollar; that the latter carried it only about two months, and

then transferred it to Mrs. Corbett for a less consideration than he paid, receiving an actual payment of only $300 out of the alleged purchase price, and taking no evidence of indebtedness for the remaining $2,500. It is said by appellee's counsel, " the sum and substance of these transactions is that they are a mere shift or device or ' conduit ' by which the title is first transferred from Corbett to Guettel, and then later from Guettel to Mrs. Corbett." It is urged that the inference must be that Guettel " either gave no money at all, or he simply advanced " it, and " made himself whole either with money or removal of merchandise." It is conceded by appellee's counsel that the forty-five cents on the dollar paid by Guettel " might be well enough were this a closing-out sale; " " that a stock, if it be sold in bulk at about fifty cents on the dollar, is a fairly good sale." But it is contended the business was not intended to cease, and hence the price was inadequate. If, however, the sale was an actual sale, we are unable to see how the value of the stock could be affected by the use which the purchaser might make of it. In other words, if the real value of the stock as it stood, with the material, old and new, accumulated in the course of the previous years of business, was, as there is evidence tending to show, approximately only forty-five cents on the dollar of its nominal value, and Guettel actually paid that price for it in good faith, the price would not become inadequate because of the use to which it was put by the purchaser, whether he continued the business or otherwise. In view of the evidence, there is no room for an inference that Guettel did not pay for the goods. It appears that it has been his business to buy up old stocks; and that he paid for the stock in question with his own money is affirmatively shown, and in no way disproven. Whatever suspicions may exist in the minds of creditors, there is no ground, under the evidence, to question that Guettel actually bought the stock for about what it was considered probably worth, and paid for it with his own money. A charge of fraud must be sustained by evidence, not merely suspicion. Schroeder v. Walsh, 120 Ill. 403; Johnston v. Hirschberg, 85 Ill. App. 47.

It is said, however, that the $300 paid by Mrs. Corbett was received from her husband. This, too, appears to be a matter of inference rather than of evidence. We are inclined to view the evidence as tending to show that she used more of her own earnings to pay her husband's debts, than she ever received back from him. It is said by counsel that the wife was only a depository or "savings bank" for her husband. But the real estate apparently purchased with her individual savings, was freely incumbered to pay obligations of her husband, and she seems to have more than repaid to his creditors any money of his, coming into her possession. It is urged by appellee's solicitors that "Mrs. Corbett never had any earnings, or any savings." But in this he is not sustained by the evidence. She received from her husband allowances at a time when, from the evidence, it appears he was solvent, practically out of debt, and free to bestow such gifts. Out of her savings from such sources, she purchased, some ten years prior to the sale to Guettel, a piece of real estate, and subsequently, with some money received from her husband for the purpose in addition to her savings, she repaired the house thereon. The property became hers at a time when her husband was prosperous and out of debt. Subsequently, when he began to be unfortunate in business, she mortgaged this property, which, under this testimony, had clearly become her own, for money which was used to pay his debts. The case referred to by appellee's counsel, In re Quackenbush, 102 Fed. Rep. 282, is not, we think, in point. There the property was transferred in fraud of creditors. No such case is here presented.

We have examined the evidence and the briefs of counsel with care, and are compelled to the conclusion that the facts as shown do not warrant the appointment of a receiver, and that the decree of the Superior Court must be reversed and the cause remanded with directions to dismiss the bill.