HANNAH M. FOSTER

v.

ALEXANDER F. McKEOWN et al.

Opinion filed October 24, 1901.

1. APPEALS AND ERRORS—when more than $1000 is involved in action ex contractu. More than $1000 is involved in an action ex contractu, where, although the ad damnum is for $1000, only, and the judgment is for less, the defendant pleads a set-off for $950, which is not fictitious nor made in bad faith, for the purpose of making the amount sufficient for final appeal to the Supreme Court.

2. PLEADING—party may declare in indebitatus assumpsit on executed building contract. If a written building contract, not under seal, has been fully performed by the contractor, and nothing remains to be done under it but the payment of money by the owner, the contractor may declare generally in indebitatus assumpsit.

3. BUILDING CONTRACTS—when a contractor may sue on common counts though he has not obtained architect's certificate. If a building contract has been substantially performed, with the exception of obtaining the architect's certificate, which is withheld, not because the architect is not satisfied with the work, but only because he does not see fit to give it or has been directed by the owner of the building to withhold it, an action will lie under the common counts, and proof may be made to excuse the absence of such certificate.

4. SAME—provisions respecting architect's certificates, written orders for alterations, etc., may be waived. If the owner of a building being erected under a written contract actively participates in the work, making verbal orders for alterations, etc., with knowledge that the conditions of the contract requiring architect's certificates, written orders for alteration, submission of claims for extras to arbitrators, and the like, are not being enforced, it is properly left to the jury to determine whether such conditions have, under the circumstances, been waived.

Foster v. McKeown, 85 Ill. App. 449, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN C. GARVER, Judge, presiding.

This is a suit on the common counts, brought to this court on appeal from the Appellate Court, to recover the remainder on a contract for extras furnished, and interest. The general issue was filed, with a plea of set-off

because of damage done the appellant by delay and the expenses by her outlayed because thereof, and for removal of debris and material.

On April 28, 1892, a written contract was entered into between the appellant and McKeown Bros. for the construction of two buildings according to plans, drawings and specifications of an architect designated. The contract states:

Sec. 1. "The contractors shall and will well and sufficiently perform and finish, under the direction and to the satisfaction of Charles S. Frost, architect, acting as agent of said owner, all the work," etc.

Sec. 3. "Should any alterations be required in the work shown or described in the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architect, and the sum herein agreed to be paid for the work according to the original specifications shall be increased or diminished, as the case may be. In case such valuation is not agreed to, the contractors shall proceed with the alteration upon the written order of the architect, and the valuation of the work added or omitted shall be referred to three arbitrators," etc.

Sec. 6. "The contractors * * * shall and will wholly finish the said work * * * on or before the 11th day of June, 1892, * * * and in default thereof the contractors shall pay the owner $10 for every day thereafter that the said work shall remain unfinished, as liquidated damages."

Sec. 7. "Should the contractors be obstructed or delayed * * * by the neglect, delay or * * * by any alteration which may be required in the said work, * * * or by the unusual action of the elements, * * * then there shall be an allowance of additional time beyond the date set for the completion of the said work; but no such allowance shall be made unless a claim is presented in writing at the time of such obstruction or delay."

Sec. 9. "The contractor shall make no claim for additional work unless the same shall be done in pursuance of an order from the architect, and notice of all claims shall be made to the architect in writing, within ten days of the beginning of such work."

Sec. 10. "The owner agrees to provide all labor and materials not included in this contract, in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the contractors, agrees that she will reimburse the contractors for such loss; and the contractors agree that if they shall delay the material progress of the work so as to cause any damage for which the owner shall become liable, (as above stated,) then they shall make good to the owner any such damage over and above any damage for general delay herein otherwise provided, the amount of such loss or damage, in either case, to be fixed and determined by the architect, or by arbitration, as provided in article 3."

Sec. 12. "Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, * * * such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials and deduct the cost thereof; * * * and if the architect shall certify that such refusal, etc., is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractors for the said work," etc.

Sec. 13. "The sum to be paid * * * shall be $4150, subject to additions or deductions, * * * and that such sum shall be paid in current funds by the owner to the contractor in installments, as follows: At the reasonable discretion of the architect, in proportion as the work progresses,—it being understood that the final payment shall be made within thirty days after this contract is completely finished: *Provided,* * * * the architect shall

certify, in writing, that all the work upon the performance of which payment is to become due has been done to his satisfaction," etc.

One R. F. Schmidt, an employee under Charles S. Frost, drew the plans and superintended the work. Alterations and extra work were done at the request of Thomas Foster and Hannah Foster, his wife and owner of the building, who saw the work being done each day and lived next door to the buildings being erected. No objection is shown by the testimony why the work should not have been accepted, nor is any dissatisfaction with the work shown. The work was not completed until in the fall. Then the appellees presented to the architect a bill for alterations and extras by them furnished, who directed Schmidt to make a bill of the items that should be allowed, which was done and a copy given to McKeown and the architect by Schmidt. Some time after this the appellees demanded a certificate for the remainder due them under the contract, of the architect, who refused it because of orders to that effect received from Thomas Foster, husband of the appellant. The appellees showed that their delay was caused by an unusual action of the elements during April, May, June and July, aside from the alterations and extra work required of them by the appellant. Some $4000 was paid to the appellees on the contract, leaving a balance of $150, and for extras furnished by the appellees, $620.83, and interest accrued. The amount of the judgment is $994.83.

E. A. ABORN, for appellant.

FRANCIS T. MURPHY, and THADDEUS S. ALLEE, (ROY O. WEST, of counsel,) for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

Appellees insist that this appeal should be dismissed because the judgment appealed from and the amount involved were less than $1000. As this goes to the jurisdiction of the court it should be first disposed of.

Appellees filed their declaration under the common counts, with an *ad damnum* of $1000, and obtained a judgment for $994.83. Appellant, in addition to the general issue, filed a plea of set-off, claiming $600 for damages for delay in the completion of the work, under the contract, $150 for moneys expended in removing rubbish and material left by appellees on the premises and to be removed by them under the contract, and for $200 for amount allowed carpenters for delay caused by failure of appellees to complete their work within the specified time.

The contract provides that there should be $10 a day allowed as liquidated damages to the owner for every day after the 11th day of June that the work should remain unfinished. The contract further provides that if the contractors (appellees) should delay the progress of the work so as to cause any damage for which the owner would become liable, the contractors should make good to the owner such damages, to be determined by the architect, etc. Evidence was offered in the trial court by appellant touching all these items, and this court can not say that such counter-claim was made in bad faith or was fictitious, and for the mere purpose of making a possible amount by which a final appeal might reach this court. If the contract and the rights of the parties under it were as contended for by appellant, then appellant would be entitled to a substantial portion, if not all, of the set-off claimed.

The errors assigned by appellant on the record are very general, simply being that the Appellate Court erred in affirming the judgment rendered by the circuit court, and in not reversing it. In the brief and argument of appellant four grounds of error are insisted upon and reversal of the affirming order asked: First, that the trial court erred in refusing to give a peremptory instruction at the close of the plaintiffs' evidence and at the close of all the evidence, to find for appellant; second, that the

court erred in sustaining the judgment below, because appellees produced no certificate of the architect for final payment, on the trial, as required by the contract; third, in admitting in evidence a paper purporting to be a statement of the account for extra work; and fourth, in refusing appellant's first refused instruction.

The contention of appellant as to the first ground of error is, that the contract being in writing and the provision being that the payment should be made upon the production of the certificate of the architect and there being no certificate produced, the evidence was not admissible under the common counts, but that appellees should have filed a special count setting up the contract and showing an excuse for failure to produce the architect's certificate, and that appellees, in the absence of a special count, could not, under the common counts, show an excuse for the absence or non-issuance of the architect's certificate, and that therefore the instructions to find for appellant should have been given. The rule is well established in this State, that if there is evidence in the record, at the close of the plaintiff's case, tending to prove the facts in support of his declaration, or at the close of all the testimony, if the evidence, with all the inferences which the jury can justifiably draw from it, is sufficient to support a verdict, then in each of such cases the peremptory instruction should be refused and the jury be given the case. *Foster* v. *Wadsworth-Howland Co.* 168 Ill. 514.) The application of these rules to this case involves a consideration of the rule of pleading and the construction of the contract in question, and a review of the facts.

As the first and second grounds of error involve much of the same matter they will be treated together.

"With respect to debts for work and labor, or other personal services, it is a rule that however special the agreement was, yet if it was not under seal and the terms of it have been performed on the plaintiff's part, and the

remuneration was to be in money, it is not necessary to declare specially, and the common *indebitatus* count is sufficient." (1 Chitty's Pl. 303.) This rule of pleading was early recognized in this State. In *Throop* v. *Sherwood*, 4 Gilm. 92, this court says (p. 98): "It is a well settled principle that while a contract continues executory the plaintiff must declare specially, but when it has been fully performed on his part, and nothing remains to be done under it but the payment of the compensation in money by the defendant, which is nothing more than the law will imply against him, the plaintiff may declare specially on the original contract, or generally in *indebitatus assumpsit*, at his election." Since that time, at least, the rule has obtained and by a long line of cases has been repeated and affirmed. *Sands* v. *Potter*, 165 Ill. 397; *Shepard* v. *Mills*, 173 id. 223.

But appellant insists that this case does not come within the rule above announced, for the reason that something remained to be done under the contract,—that is, that it remained for appellees to procure the certificate of the architect,—and therefore the declaration should have been special.

The cases of *Adlard* v. *Muldoon*, 45 Ill. 193, *Taylor* v. *Renn*, 79 id. 181, *Fowler* v. *Deakman*, 84 id. 130, *Shepard* v. *Mills*, 173 id. 223, and *Catholic Bishop of Chicago* v. *Bauer*, 62 id. 188, are all cases where the common counts are relied on, and all but the case of the Catholic Bishop were building contracts, and involved questions striking in their similarity to the case at bar. In the *Adlard case* the court says: "The contract was properly admitted, but whether it had been performed or not was a question for the jury. A party has no right to recover under any contract until he has performed his part of the agreement,— and this is true in any form of action." In the *Catholic Bishop case* the plaintiff was employed as superintendent of certain buildings to be erected. He performed all the service except to superintend the completion of

St. Peter's church, and was permitted to show he was discharged before the work was done. This court sustained the lower court. In *Fowler* v. *Deakman, supra,* there were special counts on the contract, and the common counts. The contractor had no certificate, and, as an excuse, in the special count charged collusion and fraud between the owner and the architect. The proof showed the architect refused to pass on the contractor's bill for extras and certify the same for payment, but did not show fraud and collusion. This court, upon the question of variance between the proof and the special counts, said (p. 132): "If there were only the special counts in the declaration, then the objection would be well taken; but there are the common counts, and it has always been held in our practice that where a party has fully performed his part of a written contract, and nothing remains to be done but for the other party to pay the money due under the contract, a recovery may be had under the common counts; and it is usual, in declaring on the contract specially in such cases, for the purpose of avoiding a variance, to add the common counts."

The contention of appellant would, if adopted, lead us to declare that the scope of the proof under a special count is or may be broader than under the common counts, when the converse is the true rule. If a party may sue under the common counts, then it must follow that he can introduce any evidence that tends to support his claim that he could under any form of count.

Was the certificate of the architect indispensable to appellees' recovery? This is a building contract, and such contracts have not been so strictly construed or such exact and absolute compliance with them required as in some others, because the courts have taken the view that in so important a matter as the construction of homes and buildings of a permanent character it is better for all parties that a reasonable latitude may be given, to the end that such improvements may be made as will

finally be satisfactory to the owners and such compensation given as will fairly remunerate the builder. In this class of cases the provision is usually contained for alterations and changes, and the extent and character of them is scarcely limited, being left, generally, to the discretion of the architect or the wishes of the owner; and while it is the duty of the courts to construe contracts according to their terms, they must also construe them in the light of their purposes. "In contracts like the one in suit, sometimes called 'building contracts,' a literal compliance with the specifications is not necessary to a recovery by the contractor. A substantial performance, in good faith, is sufficient. As was said in *Sinclair* v. *Talmadge*, 35 Barb. 602: 'If there has been no willful departure from the terms of the contract or omission in essential points, and the laborer has honestly and faithfully performed the contract in all its material and substantial particulars, he will not be held to have forfeited his right to remuneration by reason of mere technical, inadvertent or unimportant omissions or defects. The law imposes no such liability and enforces no such penalty.'" *Keeler* v. *Herr*, 157 Ill. 57.

We have carefully gone through the record and examined the evidence in this case, and it is there disclosed that the contention of the appellees on the trial was, that there was a general departure, by common consent, from a number of provisions of this contract relating to certificates, and that the conduct of the owner and the builders was such that the jury should find there was a waiver of a strict performance of the terms in relation to certificates. It is there contended by appellees that the work was done in substantial compliance with the contract and to the satisfaction of both the owner and the architect, and that while there were delays, they were caused by the alterations required and an unusual and extreme rainfall covering the period of the contract. The rule announced in *Fowler* v. *Deakman*, 84 Ill. 130: "The

parties, by their contract, have made the architect an umpire or arbitrator to settle all disputes and differences growing out of their contract, and that payment should only be made on his certificates that money was due under the agreement. Having made the agreement they must be governed by it, *unless the architect should act in bad faith, refuse to act, become incapacitated to act, or be prevented by some unforeseen or uncontrollable cause,*" has not been departed from, overruled or even criticised by this court.

This case fairly announces the rule that where there is a special contract, and the work has been performed in substantial compliance with it, and the only thing lacking is the certificate of the architect, and that is withheld, not because the architect finds that the work is improperly done or unsuitable material furnished, but simply because he may not see fit to give it or because he may be directed by the owner not to do so, the action will lie under the common counts, and proof may be made as to the excuse for not furnishing the certificate. The proof in this case shows that Frost, the architect named in the contract, and who is there designated as the agent of the owner, had little or nothing to do with the work in question in this case. He had with him an assistant, named Schmidt, who had been with him a number of years, who drew the plans for this building, superintended the work and was personally present during most of its progress and directed the changes, in so far as the same was done by any architect. It further showed that appellant lived on an adjoining lot to where these houses were being built, and that she and her husband personally gave the orders and directions for the changes, and especially the most important ones. The principal items of the account for extra work are, $368.81 for pressed brick, and $126 for changing the arches to pressed brick. The evidence shows that these changes were made upon the personal direction of the owners; that the husband

of the plaintiff, after the walls had been partly built of common brick, came and stopped the workmen and held the work for an hour, or until appellant should come home, when they made the order that the walls that had been built should be torn out and pressed brick substituted. The contract provided that these changes should be made upon the written order of the architect. At the time they were made they were made in consultation with Schmidt, the assistant. After the work was done appellees called upon the architect, Frost, for a final certificate, and Frost directed Schmidt to make a statement of the amounts that should be allowed for it. Schmidt did this, handing a copy to each, the architect and appellees, but Frost, when called upon to certify the same, declined to do so, saying, "McKeown, you are entitled to a certificate, but Mr. Foster has been here and has said to me not to issue you a certificate."

Appellant further insists that appellees were, under the contract, obliged to furnish either the certificate of the architect or the report of arbitrators, or to show an offer to arbitrate, under the provisions of the contract. So much of the third article of the contract as relates to the duties of the contractor and the question of arbitrators is contained in the statement of the case. From that it will be seen there was to be no arbitration except in the event that the valuation was not agreed to. The valuation was agreed to between the architect and appellees, and no condition arose, under the contract, by which it was necessary to submit the matters to arbitrators. The parties thus having proceeded with this work, appellant actively participating in it with the full knowledge that the provisions of the contract relating to certificates and orders in writing of the architect were being disregarded, and being a party to it, we regard it as entirely proper that the court should have left it to the jury to say whether these conditions had been waived, and whether, under all the circumstances, appellees were

entitled to recover. This the court did. The jury found for appellees. The Appellate Court has affirmed their finding, and in so far as the case depends upon the finding of facts this court is concluded. It only looks to the facts to enable it to pass upon the action of the trial court and properly determine the errors of law attributed to it.

The third ground of error insisted upon is, that the court erred in admitting in evidence the paper containing the statement of the account. This is the paper mentioned in the foregoing paragraph, that was prepared by Schmidt by the direction of Frost, containing the list of extras, and their value, for these houses, a copy of which was furnished to Frost at the same time. We see no error in the admission of this paper. It was admitted for consideration in connection with the testimony of appellee McKeown, and Schmidt, who superintended the building. Appellant did not question a single item of it in the trial below, nor offer a witness to show that there was any part of the work not properly done or that any unfit or inferior material was used.

The last contention of appellant is, that the court below erred in refusing to give an instruction embodying the third paragraph of the contract, which is to the effect that if alterations should be required in the work from the drawings and specifications, a fair and reasonable valuation of the work, as changed, should be made by the architect and the contract price be accordingly increased or diminished, and if the valuation was not agreed to, the contractors should proceed with the alterations upon the written order of the architect, and the valuation of the work should be referred to arbitrators to be selected one by each of the parties and the other by the two thus chosen, and told the jury that if they found, from the evidence, that alterations were made, in such case the plaintiffs should not recover for the valuation or alterations unless they had obtained the written order of the

architect for said alterations, and had offered to refer the valuation of said alterations to three arbitrators to be appointed according to the terms of the contract. As we have said, these alterations were made without any written order of the architect, upon the verbal order of the appellant, and it was a question before the jury whether that condition had not been waived. This instruction wholly ignored that question, and in effect told the jury that the owner could ignore the contract and have as many alterations made as she saw fit without referring the matter to the architect at all, and then, after having done so, that she need not pay for them unless they were made upon the written order of the architect and the price agreed upon, or if not agreed upon, an offer made to arbitrate. This is not the law.

On such matters as come before us for review we regard the decision of the Appellate Court in affirming the action of the lower court as consonant with the law applicable to the case, and therefore affirm it.

*Judgment affirmed.*