DETERMINED IN THE

# FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

## DURING THE YEAR 1904.

---

## Robert Hart, et al., v. Carsley Manufacturing Company.

### Gen. No. 11,495.

1. COMMON COUNTS—*when recovery may be had under.* Where final payment for work done by a contractor is made by contract dependent upon the issuance to him of a certificate by the supervising architect, and such certificate is withheld through collusion with the owner liable to pay under such contract and the evidence shows that such contractor has substantially complied with his contract and that his work has been accepted by such owner, recovery may be had under the common counts.

2. DELAY IN COMPLETION—*when, deemed waived.* Delay in completing a building contract is deemed to have been waived by the owner where discussion arose during the progress of the work as to the advisability, pursuant to the contract, of taking the work from the contractor because of such alleged delay, which discussion terminated in the subletting by the contractor, with the consent of the owner, of certain portions of the work.

3. BUILDING CONTRACT—*when owner liable to pay under.* Where the evidence shows that buildings have been completed and have been accepted and appropriated by the owner, he is liable to the contractor for the contract price, less any damage which he may have suffered by reason of the failure of such contractor strictly to comply with the terms of the contract.

4. ARCHITECT'S CERTIFICATE—*when, not essential to recovery.* In an action upon a building contract which makes final payment conditional upon an architect's certificate, such certificate is not an essential to recovery if it appears from the evidence that the architect in withholding the certificate did not exercise his honest judgment.

(159)

5. EXTRA WORK AND MATERIAL—*when, may be recovered for, not-withstanding it was furnished without written order.* Extra work and material supplied by the contractor without a written order from the architect, as provided by the contract, may be recovered for in an action against the owner, where it appears that the same was accepted by him and no question made as to the character or quality of such extra work and material and the prices charged therefor.

6. COMPETENCY OF EVIDENCE—*when, cannot be questioned.* The competency of a particular class of evidence cannot be questioned where the complaining party offered and had received like evidence upon his own part.

7. INTENT—*when proof of, by direct testimony, competent.* Where the question is as to whether an architect exercised his honest judgment in refusing to issue a final certificate, it is competent to ask him directly, and for him to answer directly, as to what his intent was in refusing such certificate.

8. RECOUPMENT—*when, deemed in issue.* Where the plea of the general issue is on file and the evidence introduced would fairly have tended to support a claim of recoupment, and no contrary intention appears, it will be presumed that the defense of recoupment was interposed and determined by the jury.

9. INSTRUCTIONS—*must not give undue prominence to particular evidence.* Instructions should not give undue prominence to particular facts and circumstances in evidence, and where they contain such vice they are properly refused.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 4, 1904.

**Statement by the Court.** Appellee brought suit in assumpsit against appellants, the declaration being a special count on the contract and the common counts, to recover a balance claimed to be due to it for certain work done and materials furnished and certain extras towards the erection of seven three-story and basement flat buildings in Chicago, pursuant to a written contract between them. The plea was the general issue. A trial before the court and jury resulted in a verdict in appellee's favor and judgment thereon for $7,499.36, from which this appeal is prosecuted. If appellants are liable the amount is not questioned.

The material portions of the contract, so far as the questions discussed by counsel are concerned, are as follows:

I.   The contractor, under the direction and to the satisfaction of Peabody & Beauley of the City of Chicago, County of Cook, State of Illinois, architect, (hereinafter designated and referred to as the architect) shall and will provide all the materials and perform in good and substantial manner all the work mentioned in the specifications and shown on the drawings prepared by the architect, (which drawings and specifications are identified by the signatures of the parties hereto and are hereby made a part and illustrative of this contract) for the furnishing, installing, finishing, varnishing complete of all cabinet work including all mill-work except for exterior, (no exterior painting) agrees to furnish, lay and finish all hardwood floors (except varnishing on kitchen, pantry and butler's pantry floors), including all frames and sash, 7 additional bays with 1 seat to each as per sketch submitted.   All sash to be fitted and hung by others.   This contractor to include all in accordance with plans and specifications for same including grounds for all cabinet work (no stripping for floors).  Further agrees to furnish complete all additional window seats at the rate of $2.00 per lineal ft.   Contractor to verify all measurements at building.

II.   The architect shall furnish to the contractor such further drawings or explanations as may be necessary to detail and illustrate the work to be done, and the contractor shall conform to the same as part of this contract so far as they may be consistent with the original drawing and specifications referred to in Section I aforesaid.

III.   No alterations shall be made in the work shown or described by the drawings and specifications, except upon a written order of the architect, and when so made, the value of the work added or omitted shall be computed by the architect; and the amount so ascertained shall be added to or deducted from the contract price.   In the case of dissent from such award by either party hereto, the valuation of the work added or omitted shall be referred to three (3) disinterested, competent arbitrators, one to be appointed in writing by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be reduced to writing and shall be final and binding, and each of the parties hereto shall pay one-half of the expenses of such reference.

V.   Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of material of the proper quality, or fail in any respect to pros-

ecute the work with promptness and diligence, or fail in the performance of or omit or neglect to perform any of the agreements herein contained. such refusal, neglect, omission or failure being certified by the architect, the owner shall be at liberty, after 3 days' written notice to the contractor, to provide any such labor or materials, or to make good or remedy at his option any such failure, neglect or omission, and to deduct the cost and expense thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect, omission or failure is sufficient ground for such action, or in case of the bankruptcy or insolvency of the contractor, the owner shall also be at liberty to terminate absolutely the employment of the contractor for the said work and to enter upon the said premises of the owner and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, together with his damage, loss and outlay in the premises, such excess shall be paid by the owner to the contractor; but if such expense, damage, loss and outlay shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage. loss or outlay incurred through such default. shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties.

VI.    The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to-wit: The contractor to commence work immediately and prosecute the same without delay.

VII.    Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or architect, or of any other contractor employed by the owner upon the work, then the time herein fixed for the completion of the work

shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architect within twenty-four hours after the occurrence of the cause or the commencement of such delay. The duration of such extension shall be certified to by the architect, but appeal from the architect's decision may be made to arbitration, as provided in Section III of this contract.

IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be $22,715.00, subject to additions and deductions as herein provided, and that such sum shall be paid in current funds by the owner to the contractor in installments as follows: Contractor to receive 85% of the contract price as the work progresses. The final payment shall be made within 30 days after this contract is fulfilled; but all payments shall be made only upon written certificates of the architect to the effect that such payments have become due and not otherwise, and such certificates shall be a condition precedent to the right to require payment.

The specifications referred to in the contract have, among others not brought in question in this record, the following provisions, to-wit:

"GENERAL CONDITIONS OF SPECIFICATIONS. * * * The architects will supply full sized sections of all moulded and cut work, and the work must be executed in conformity therewith. If the contractor varies from the drawings or specifications in the quality of any work or in the amount or value of materials used therein, the architects or their representatives shall be at liberty at any time before or after the completion of the work to order such work removed, remade and replaced, the contractor to bear the entire expense connected with such change. * * * The contractor is to carry on his work at all times with the greatest reasonable rapidity, under the direction of the architects and to their satisfaction, and all the materials are to be the best of their respective kinds and all workmanship to be of the best quality. * * *

SPECIFICATIONS FOR CARPENTER WORK. * * *

Second Floors. The woodwork of all rooms throughout second floors to be of the best quality of Pennsylvania red birch to stain. All finish to be constructed in accordance

·with detail drawings. All door panels to be built up in three thicknesses of pine and veneered. The third floor trim will be identical with that of second floor. All interior woodwork to be hand smooth for the finish. All interior finish to be put up with neat, close joints and nailed with wire finishing nails.    *    *    *    No finished floor to be laid in any of the rooms before the plastering is thoroughly dry, and no finished woodwork to be brought to the building before the plastering is completed."

Besides the general verdict the jury rendered the following special findings of fact in answer to questions submitted to them, to-wit:

"1.    Q.    Was the final certificate of the architects in this case withheld through any fraud?    Answer.    Yes.

2.    Q.    Was the final certificate of the architects in this case withheld through any collusion with the defendants or any of them?    Answer.    Yes.

3.    Q.    Did the architects in withholding from the plaintiff the final certificate in this case exercise their honest judgment?    Answer.    No.

4.    Q.    Was the final certificate of the architects in this case withheld through any mistake so gross as to necessarily imply bad faith?    Answer.    Yes."

Among other instructions given for the plaintiff were the following, to-wit:

"2.    The court instructs the jury as a matter of law that in suits on building contracts a literal compliance with the plans, specifications and drawings by the contractor is not necessary to a recovery; and if you find from the evidence that the plaintiff in good faith performed the contract on which recovery in this suit is sought, substantially and in all material particulars according to its terms and the plans, specifications and drawings for the work, without wilful departure therefrom or omission in essential points, that such performance is sufficient to entitle the plaintiff to maintain its suit.

3.    The court instructs the jury as a matter of law that it is implied in all building contracts, including the one offered in evidence, that the owner will keep the work which necessarily precedes that covered by the contract so far advanced that such work may be done.

5.    The court instructs the jury that no time is fixed in the contract between the parties within which the work

contemplated was to be completed, and that as a matter of law the plaintiff was entitled to a reasonable time to complete the work, and if you find from the evidence that the plaintiff did complete the work in substantial compliance with the plans and specifications within a reasonable time after the execution of the contract, you are instructed that the defendants are not entitled to recoup damages for delay in completing the work. In determining what was a reasonable time you should consider the nature, character and extent of the work, the conditions under which it had to be performed, and every other fact and circumstance disclosed by the evidence which will aid in determining the question.

6. The court instructs the jury as a matter of law that the contract in evidence did not obligate the plaintiff to complete the seven houses separately, or any number less than all, before the rest, but merely required the completion of all seven within a reasonable time.

7. The court instructs the jury that under the provisions of the contract between the parties offered in evidence, the defendants had the right to take the contract away from the plaintiff, if the plaintiff failed to supply a sufficiency of properly skilled workmen or materials of proper quality or failed in any respect to prosecute the work with promptness and diligence, or failed in the performance of or omitted or neglected to perform any of the agreements of such contract through and by means of the architect in charge of the work certifying such refusal, neglect or omission or failure of the contractor as sufficient ground therefor, and by service of a three-day written notice in accordance with said certificate; and if you find from the evidence that no such certificate was made by the architect and no such notice was given to the contractor, that the contractor had the right to proceed with said work to its completion, and the failure of the defendants and the architect to make such certificate and give such written notice may be considered by you in determining from the evidence what was a reasonable time in the contemplation of the contract for the performance thereof."

The court also gave twelve instructions for the defendants and refused three, to one of which reference will be made in the opinion.

Julius & Lessing Rosenthal, for appellants.

PIERSON & PEASE, for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

A preliminary question is presented, viz., as to whether there can be any recovery in this case on the common counts, the trial court having held that the contract between the parties was not admissible in evidence under the special count, but was competent only under the common counts, and that ruling not being questioned. In view of the recent case of Foster v. McKeown, 192 Ill. 339–48, we deem it unnecessary to make any review of the numerous authorities referred to by appellants' counsel. That case is quite similar in its facts to the case at bar, in so far as concerns the right to recovery on the common counts. It was there claimed, as in this case, that the plaintiff, who sought to recover on the common counts without the architect's certificate, had performed his part of a written building contract. The court, in speaking approvingly of a previous decision—Fowler v. Deakman, 84 Ill. 130—say, that it announces the rule that "where there is a special contract, and the work has been performed in substantial compliance with it, and the only thing lacking is the certificate of the architect, and that is withheld, not because the architect finds that the work is improperly done or unsuitable material furnished, but simply because he may not see fit to give it, or because he may be directed by the owner not to do so, the action will lie under the common counts, and proof may be made as to the excuse for not furnishing the certificate."

The jury in this case held, and the evidence in the record in our opinion sustains the finding, that the final certificate of the architect was withheld through collusion with the defendants, or one of them, and that in withholding such final certificate the architects did not exercise their honest judgment. The evidence also tends strongly to show that the appellee substantially complied with its contract for the furnishing of the material and performance of the work thereunder, and that appellants accepted the same as a sub-

stantial compliance with the contract. In this regard the verdict of the jury cannot be said to be without support, and we think the case was properly submitted to the jury under the evidence and on the common counts.

Next, appellants' counsel claim that the verdict and special findings of the jury are not supported by the evidence. In this regard counsel make numerous claims as to the details of the evidence, which we will not attempt to follow. They relate in the main to alleged delay on the part of appellee in carrying out the contract, and its alleged failure to perform the contract, in that on the second and third floors and the rear part of the first floor of the different buildings, the interior finish, as it is claimed, was "knock down" work, whereas it should have been, under the contract, "cabinet" work.

It should be noted that under the contract appellee was to do the work and furnish the material in question under the direction and to the satisfaction of Peabody & Beauley, architects, the work to be done being that mentioned in the specifications and shown on the drawings, which were made a part and illustrative of the contract, and that "all cabinet work, including all mill work except for exterior," was to be furnished, installed, finished and varnished complete; also the architect was to furnish the contractor such further drawings or explanations as might be necessary to detail and illustrate the work to be done; also that no alterations should be made in the work shown by the drawings and specifications except upon written order of the architect; that if the contractor at any time refused or neglected to supply sufficient skilled workmen or materials of proper quality, or failed in any respect to prosecute the work with promptness and diligence, such refusal or neglect or failure being certified by the architect, the owner should be at liberty, after three days notice to the contractor, to provide such labor or materials, or make good or remedy any such failure, neglect or omission of the contractor, and deduct the cost thereof from any money due to the contractor, and in such case the owner should be at liberty to

terminate the contract, with other provisions as to its completion, as set out in the statement; that the contractor should "commence work immediately and prosecute the same without delay," and in case the contractor should be delayed by the owner for any reason, by the architect, or any other contractor employed by the owner, then the time fixed by the contract for the completion of the work should be extended for a period equivalent to the time lost by reason of any or all of said causes; and that the contract price, $22,715, should be paid to the contractor in installments as follows: "Contractor to receive eighty-five per cent of the contract price as the work progresses." It is also provided by the specifications, that if the contractor varies therefrom in the quality of any work, the architects should be at liberty, before or after the completion of the work, to order the same removed, remade and replaced at the contractor's expense.

Very soon after the making of the contract, June 29, 1901, appellee entered upon its performance and completed it, as the evidence on its behalf tends to show, on the 20th day of June, 1902, and on the following day in a written communication to the architects, Peabody & Beauley, made a request for an architect's certificate in full, less fifteen per cent to be retained under the terms of the contract. After considerable delay, and on August 6, 1902, said architects in a written communication to appellee declined to issue a final certificate. This ended all communications between the parties, and this suit was begun a few days thereafter.

The trial was had apparently upon the theory, by both parties, that it was appellee's duty, under the provision of the contract, to "commence work immediately and prosecute the same without delay," to complete the work within a reasonable time from the making of the contract. Appellants' sixteenth instruction, given, is based upon this theory. The evidence on behalf of appellee in this regard is to the effect that a reasonable time within which its work under the contract could be completed was from

eleven to twelve months, and that the work was commenced the next day after the contract was made, and substantially completed within eleven months and about twenty days from the date of the contract. The evidence on behalf of appellants is that such reasonable time would have been ninety days to four months from the date of the contract. There is evidence tending to show that the work of appellee was delayed by the architects, the defendants and their contractors for different reasons, mainly because of the failure of the plastering contractor to complete his work so that the appellee's work could proceed. The specifications have a provision that no finished floor should be laid before the plastering was thoroughly dry, and no finished woodwork should be even brought to the building before the plastering was completed. The plastering was not completed until about February 18, 1902, as is shown by a letter of the architects of that date. There is also evidence tending to show that appellee did not make the progress with its work that it should have done for several reasons, the principal ones being that in the fall of 1901 it moved its factory from the south to the west side of Chicago, and because it did not employ upon the work a sufficient number of men. There were frequent complaints made by the architects and owners of the building from time to time regarding these and other matters, which it is unnecessary to refer to in detail. Suffice it to say we have considered all the evidence bearing upon these matters. So far as concerns the removal of appellee's factory, we think that any delay in the prosecution of the work occasioned thereby was waived by appellants. The matter was discussed between the parties as to whether the contract should be taken from appellee because of its alleged inability to carry through the contract with reasonable dispatch by reason of the factory removal. The result of this discussion was that appellee sublet, with the consent of the defendants and the architects, the sash, door and stair work included in its contract, and appellants, as well as the architects, as we think the evidence fairly es-

tablishes, waived any delay of appellee in this regard, and permitted it to proceed with the work. All the work so sublet was done to the satisfaction of and was accepted by appellants. It is important, in this connection, to consider the provisions in the contract fully quoted in the statement, which empower the owner, on certificate of the architects that the appellee had failed to prosecute the work with promptness and diligence, and after three days' notice, to terminate absolutely the contract, and to enter upon the premises and complete the work and furnish the materials necessary to a full performance of the contract at appellee's expense. The record shows that from time to time, commencing as early as the 15th of February, 1902, estimates of work completed and materials furnished under the contract were presented by the appellee to the architects, and payments were made by the defendants from time to time upon certificates issued by the architects, and even without certificates in some instances, up to May 27, 1902. Also two of the buildings were fully completed, turned over to appellants and accepted by them without objection as early as February, 1902. These facts considered in connection with all the other evidence bearing upon the question of delay, especially that relating to the failure to complete the plastering until in February, 1902, and the proof as to what was a reasonable time in which to complete the work, we think the jury was justified in finding that the work was done by appellee in a reasonable time, and if the contract was not completed in a reasonable time, it was not appellee's fault; also that any failure of appellee in this respect was waived by appellants.

As to whether the appellee performed its contract as to the character of the work done on the second and third floors and the rear portions of the first floor of the different buildings, viz., whether it did " knock down " instead of " cabinet " work, there is a conflict in the evidence; also as to what is a proper construction of the contract and specifications in that regard, counsel differ. The claim of appellants is that, under the contract, all of the work on

the inside of the building in these parts was to be "cabinet" work. This contention is not, in our opinion, sustained by the contract, which provides in this regard that appellee should do "all cabinet work, including all mill work except for exterior;" also that the work should be that "mentioned in the specifications and shown on the drawings prepared by the architect," which were made a part and illustrative of the contract. The specifications provide also, "all finish to be constructed in accordance with detail drawings. * * * The third floor trim will be identical with that of the second floor. All interior woodwork to be hand smooth for the finish. All interior finish to be put up with neat, close joints, and nailed with wire finishing nails." It seems to us clear by the contract that these parts of the buildings were to have in the interior finish both cabinet and mill work, otherwise called by the witnesses "knock down" work, which all the witnesses for both parties agree are different kinds of work, and are clearly distinguishable because of the manner in which it is put together and smoothed off. Cabinet work is a far superior quality of work than "knock down" work, and is generally done in the factory, ready to be placed in position in the building. Very few, if any, nails are used in its construction, while "knock down" work is brought to the building in pieces and is there put together by the workmen, in doing which they use many more nails than are used in any kind of cabinet work. It will be noted that the specifications provide that the interior finish should be nailed with wire finishing nails, which clearly refers to mill work, as we construe the evidence of the witnesses, and not to cabinet work. Moreover, it was the duty of the contractor to do his work in accordance with detailed drawings, which were to be furnished by the architect, and no claim is made that any drawings were furnished by the architect which indicate that the work which it is claimed should have been but was not cabinet work was designated on such drawings to be cabinet work. Independent, however, of the provisions of the contract, and conceding that

appellants are right in their contention that this work should have been "cabinet work" and was not, the evidence all considered is sufficient to have justified the jury in finding that all this work was in fact "cabinet" and not "knock down" work. There is nothing in the record from which it can be told what the conclusion of the jury in this regard was, but the general verdict is consistent with a finding that the work was cabinet work. It is also an important consideration in this regard that this work was permitted, with the knowledge of Mr. Beauley, the architect, and of appellant Frank, both of whom were the active parties in the construction of the buildings, representing respectively the firm of architects and the appellants, to be placed in the buildings without objection on the part of the appellants or the architect at any time, until the refusal by the architects of the final certificate; also that two of the buildings were by special request of the appellants finished by appellee and turned over to appellants and accepted by them without any objection whatever as early as the month of February, 1902. The work on these buildings so accepted, is, according to the evidence, substantially the same as that in all the others.

A consideration of the whole evidence bearing upon the question of the performance of the contract by appellee, in so far as it relates to the character of the work, we think justifies the conclusion that the contract and specifications were substantially complied with by appellee, and in any event, since the evidence shows that the buildings had been accepted and appropriated by the appellants, they are liable to appellee for the contract price, less any damages which they may have suffered by reason of its failure to strictly comply with the contract. Eyster v. Parrott, 83 Ill. 517; Paddock v. Stout, 121 Ill. 578; Foster v. McKeown, 192 Ill. 339-47; Christopher I. Co. v. Yeager, 202 Ill. 492, and cases cited; Galbraith v. Chicago etc. Works, 50 Ill. App. 253, and cases cited.

In the Eyster case the court, in speaking of a building contract, said: "It is true that appellee did not comply

with his contract as to time, but, after he was in default in this regard, the appellant made partial payments to him, and urged him to go on with the work, and he did go on, and expended money in work and materials to a considerable amount. This was a waiver by appellant of her right to demand, on account of such failure, a forfeiture of appellee of the work he had done."

In the Foster case the court said, in speaking of building contracts, that " a literal compliance with the specifications is not necessary to a recovery by the contractor. A substantial performance, in good faith, is sufficient." The Yeager case, *supra*, is to the same effect.

In the Galbraith case this court said, in speaking of a building contract which had not been performed on time : " The completion of the work on time was not a condition precedent to the action, but damages resulting from the delay may be recouped (citing cases). And the recoupment needs no special plea; it is had under the general issue." (Citing Wadhams v. Swan, 109 Ill. 46.)

In this case, although it is contended by appellants' counsel that they did not seek to recoup damages, as will be shown more particularly later, it appears that the appellants produced evidence tending to show that they were damaged more than the amount claimed by appellee. The plea of general issue allowed them to recoup any damage that they had suffered by reason of the alleged delay of appellee in completing the contract in a reasonable time, as well as for any failure to do the work according to the contract and specifications. The instructions given on behalf of appellants indicate an intention to submit these matters to the jury, and if they were not formally submitted, it is appellants' fault. In any event, we think that the verdict should not be disturbed on the question as to whether appellee performed the contract.

Appellants' counsel argue with great earnestness and ability that, under the evidence in this case, inasmuch as the contract provides that all payments to appellee shall be made only upon written certificate of the archi-

tect, and that such certificate shall be a condition prece-
dent to the right to require payment, this condition must
be strictly complied with, and the appellee, having failed
to procure a final certificate from the architect, it cannot
recover, because it has failed to show by its evidence any
valid excuse for not procuring such certificate.  We think
a complete answer to this argument is found in the answers
made by the jury to the special interrogatories, if such
answers are justified by the evidence.  For the purposes of
this decision it is necessary to consider only the third
special interrogatory, viz.:  " Did the architects, in with-
holding from the plaintiff the final certificate in this case,
exercise their honest judgment?" which the jury answered
"No."

The law is, without question, that if the architects did
not exercise their honest judgment in refusing to give ap-
pellee the final certificate, that was bad faith on their
part and justified the finding of the jury, and was a suffi-
cient excuse that appellee did not get a final certificate.
Foster v. McKeown, 192 Ill. 339–48, and cases cited; Badger
v. Kerber, 61 Ill. 328–31; Arnold v. Bournique, 144 Ill.
132–7, and cases cited; Rawle v. Gilmore, 76 Ill. App. 375.

In the Arnold case the court, in speaking of a building
contract which provided that payment should be made to
the contractor only upon the certificate of the architect,
said :  "If, however, the materials have been furnished and
the work completed according to the contract, and a certifi-
cate has been demanded from the architect and fraudulently
withheld by him, the contractor will be relieved from the
necessity of procuring the architect's certificate."

In the Foster case the court quotes approvingly the lan-
guage used by the Supreme Court in a previous decision
bearing upon this question, as follows :  "Having made the
agreement they must be governed by it, unless the archi-
tect should act in bad faith, refuse to act, become incapaci-
tated to act, or be prevented by some unforeseen or uncon-
trollable cause," and say that this ruling has not been
departed from or even criticised by the court.  The court

held that a contractor could recover when he had shown a substantial compliance with his contract which made an architect's certificate a condition precedent to recovery, if such certificate was withheld simply because the architect did not see fit to give it, or because he was directed by the owner not to do so.

It is contended by appellants' counsel that the evidence is absolutely insufficient to warrant any finding of fraud or bad faith on the part of the architects, and in support of the contention cite numerous cases in this and other states, among others, Blow v. Gage, 44 Ill. 208–17; Shinn v. Shinn, 91 Ill. 477–86; Pratt v. Pratt, 96 Ill. 184–99; Mortimer v. McMullen, 202 Ill. 413–15; which hold in substance, among other things, that when fraud is charged it must be proved and cannot be established by mere suspicion—will not be presumed, and must be established by strong and cogent proof, which must leave the mind well satisfied that the allegation is true. Such is no doubt the law, and we think the evidence in this case, tested by the rule of these authorities, justifies the answer of the jury to the third interrogatory.

The evidence is clear that the architects declined to give appellee the final certificate, but that decision, so far as appellee had any knowledge of it, had not been reached by the architects before July 29, 1902, when Mr. Carsley, the president of appellee, made an oral demand upon Mr. Beauley, the active member of the firm of Peabody & Beauley, with reference to these buildings, and who had special charge of them, for a final certificate. Mr. Carsley testified that Mr. Beauley then said he would not issue a certificate at any time. A written decision was not made by the architects until August 6, 1902, when Mr. Beauley, in the name of Peabody & Beauley, wrote a letter to appellee which enclosed a letter from appellants to Peabody & Beauley, dated August 5, 1902, by which they in terms, giving their reasons, declined then to issue a final certificate. The letter of appellants, among other things, says: "We request you in writing to withhold the final certificate,"

and assigns as reasons why it should be done, the delay of appellee in completing the work, which they claimed resulted in a loss of $7,000 in rents during a period of six months, and certain amounts not named, for heating the premises; also because the work on the second and third stories and the rear portion of the first story was "knock down" and not "cabinet" work. This letter also, besides requesting that the final certificate be withheld, states: "We also demand of you that you estimate our damage so that we may at an early date bring suit against the Carsley Mfg. Co. to recover the amount due us." It also has a postscript which calls attention to other minor matters as to which they claimed the appellee had not performed its contract. The letter of Peabody & Beauley, which enclosed appellants' letter, among other things contains the following language: "We have carefully considered Hart & Frank's letter, and might as well say to you now as later, that we believe that they are fully justified in the position which they take. Every point made by them seems to be right. In view of this we are not prepared to issue a final certificate in this matter. We shall set ourselves to work at an early date, to examine the whole matter very thoroughly, and to compute the damages which Hart & Frank appear to have sustained. This will require some little time."

It is apparent from this language that the architects, while they declined to issue the certificate, at the same time endeavored to make the impression on appellee that their decision was not final, and they would give further consideration to the matter. Mr. Beauley, who wrote this letter, testified on his direct examination, in speaking of the conversation with Mr. Carsley which he had on July 29, to which reference has been made, that he told Mr. Carsley, "that I was going to settle this matter, and that I was the agent employed for the purpose of looking out for the interests of my clients, and in the settlement of this work I was going to act upon my honest and independent judgment; and that I would not issue him at any time a certifi-

Hart v. Carsley Manufacturing Co.

cate for the amount due him on the work, because I told him that the amount of delay that he had caused those. people was a good deal more than what was coming to him; and I told him what I based my opinion on and my figuring on.   I took in figuring the rental value of the property, on six of the houses, at $2,000 a year, and figured up the expense of janitor and gas bills and heating the work, which never would have had to be heated had he finished the contract at the time agreed upon.   *   *   *   I am dealing with you in this matter, and I give you my ultimatum now, that I am not going to issue a certificate for that work, and those are my reasons."

It also appears from a letter to appellee, written by Mr. Beauley, in response to its written request for a final certificate, made June 21, 1902, that he had come to no conclusion with reference to issuing a final certificate.   In that letter he says :   "I will take pains to look into this matter in the next few days with reference to a settlement of your contract."

Mr. Carsley wrote a letter under date of August 2, 1902, in which he refers to the conversation between him and Mr. Beauley on July 29, and says that Beauley in that conversation "stated that the work was all right and very nice, etc., but further stated that he had orders not to issue any certificate, as Hart & Frank were going to close the matter the next day."   On cross-examination Mr. Beauley testified, among other things, that he saw the interior finish as it went into the second and third stories of the building; "saw the man putting it up and the first load of trim that was brought there;" that he knew the difference between "cabinet work" and "knock down work" at a glance; saw the "knock down work" when it was delivered to the building; that he readily saw all the defects as the work was going on, and knew when the work was going on that he had the power as architect to condemn any work that went into the building, but gave no order, while the work was in progress, to take down and replace any of the alleged "knock down work." He also admits that he was

absent from the city of Chicago while the work was in progress four different periods of from three weeks to a month each, and while so absent neither his partner nor any assistant went near the buildings. He also testified that a reasonable time in which appellee's work under the contract should have been completed was 120 working days. This would have required appellee to complete the work about November 1, 1901. It is not, however, claimed that appellee should have completed the work earlier than about December 1, 1901, and Mr. Beauley, in his letter to appellee declining to issue a final certificate, says, referring to this matter among others, that it seems about right. Being asked on cross-examination when he first intended to hold back certificates for delay, Mr. Beauley answered, "Right after I had afforded the Carsley Mfg. Co. ample time to complete the work." The appellant Frank testifies, among other things, that he knew about the defects in the work of which he complained (and he was the active man of appellants with regard to the construction of the buildings), and knew all the while the work was going on that it was being delayed—that he "felt that the delay was outrageous," but he never required the architect to take down and replace any of the alleged improper and defective work, and says that he "was glad to get it up;" also that he knew of the provision in the contract which gave him the power, when the architect so certified, and on giving three days' notice to appellee, to terminate the contract by reason of delay; also that he "decided to hold back money on the final payments on this job," if he could do it, when he found out appellee "was delaying it the way he was." Mr. Frank also admits that he wrote the letter of August 5, 1902, requesting the architects to withhold the final certificate and demanding that they estimate the damage by reason of delay after he had consulted with his attorney; also that his attorney "dictated that letter." Notwithstanding all this knowledge of Mr. Beauley and Mr. Frank, they allowed the work to go on—even urged it, and ordered and accepted extras

amounting to $1,382 from appellee, the last order being given in June, 1902.

Without referring further in detail to the evidence tending to show the bad faith of Mr. Beauley in declining to issue a final certificate, after a careful consideration of that referred to, as well as numerous other items bearing upon this question which tend to support the jury's special finding of bad faith, including also the correspondence between the parties, and other matters of evidence which tend to support and justify the action of Mr. Beauley, we are of opinion that the jury was justified, not only in finding that Mr. Beauley acted in bad faith, but that he refused to issue the final certificate because of the request of appellants. The refusal, based on appellants' request, to us seems to have been, with Mr. Beauley, the equivalent of a demand, and we think it was well understood between appellants and Mr. Beauley long before August 6, 1902, that appellee was not to get a final certificate. We think it not an unreasonable inference from the evidence that appellants' intention was, long before appellee's work was completed, to have the final certificate held back for as large an amount as possible, after they had obtained a substantial compliance by appellee with its contract, and at the same time procure from it as much extra work and material as they desired to have put upon the buildings, and then bring up against appellee their alleged claim for damages for delay and for improper and defective work. Their course of action and the intention indicated thereby were calculated to give the jury the impression that they acted in bad faith.

Among the claims made on behalf of appellants it is contended that the court erred in not excluding evidence as to extra work and materials furnished by appellee, but no argument is made in support of the claim. It is true that the contract provides in substance that no extras should be allowed to appellee, except upon the written order of the architect, and it appears that certain of the extras claimed by appellee were furnished without any written order from the architects, but they were all accepted by the

owners and no question is made upon the character or quality of the work and materials furnished, nor as to the prices charged therefor. We think the evidence was properly admitted, and the requirement of written orders therefor has been waived by the appellants. R. R. Co. v. Moran, 187 Ill. 324, and cases cited; Stubbings Co. v. World's Col. Ex. Co., 110 Ill. App. 210–20.

It is also claimed that the court erred in permitting appellee to take the opinions of witnesses as to what was a reasonable time within which to do the work covered by the contract, plans and specifications in the case, because it is said that was an element upon which the jury should pass, and not a question of expert evidence. Whatever may be the merits of this claim, appellants are in no position to urge that it is reversible error, since they offered and the court received similar evidence on their behalf. Having asked the court, and their request having been granted, to admit the same class of evidence which is now claimed to be improper, they cannot insist that it was error. Whalen v. Stephens, 92 Ill. App. 236–46, affirmed 193 Ill. 121–32.

It is further said that the court erred in not permitting the architect to testify as to his intent in withholding the architect's certificate. We think the question which the court refused to allow the witness to answer in this respect should have been answered, but we think the error in that regard, if any, does not justify a reversal, because immediately afterwards he testified, in effect, that he acted upon his own judgment in withholding the certificate, and not upon any one's orders or request. We think this evidence, with other evidence showing why he declined to issue the certificate, sufficiently shows what the witness claimed was his intent in withholding the certificate.

After we had in conference reached conclusions on the court's ruling as to instructions, appellee moved the court not to consider the instructions appearing in the abstracts, for the reason that it does not affirmatively appear that the instructions in the record and abstract are all the in-

structions given by the court.   Our conclusions being favorable to appellee, it is unnecessary to pass upon this motion.

Complaint is made of the second instruction for appellee, quoted in the statement, because it makes no reference to the fact that appellee did not procure an architect's certificate, and therefore ignores the principal defense of the appellants, and in effect tells the jury that if the appellee in good faith and substantially performed its contract, that was sufficient to justify a recovery.   We think there was no error in giving the instruction.   While it is true that before the appellee could recover, it was necessary for it to show an excuse for not obtaining the architect's certificate, that was shown, as we have seen, by the evidence which formed the basis of the jury's answers to the special interrogatories.   These answers, in our opinion, show that the criticism of appellants' counsel of this and appellee's fifth instruction, also quoted in the statement, is not well founded.   It follows that if the architects were guilty of bad faith or fraud, as found by the jury, the jury could not possibly have been misled as to the law of the case, or to appellants' prejudice by either the second or fifth instructions.   Moreover, as is well established, the instructions must be read as a series and considered together.   Appellants' thirteenth, fourteenth and fifteenth instructions fully cover any question in the case regarding the architect's certificate, and it necessarily follows, as we think, from what is stated in the second instruction, as justifying appellee's recovery, that it would have been entitled to the architect's certificate, and it would have been bad faith on the part of the architects had they refused a certificate in face of the existence of such facts.   The law bearing upon these instructions is stated in the quotation from the Foster case, *supra.*

It is also said that the said fifth instruction is erroneous, in that it tells the jury that if the appellee substantially complied with its contract, within a reasonable time after its execution, then the defendants were not entitled to recoup damages for delay in completing the work, because

counsel say there was no attempt in the case to recoup damages, and that the only purpose in proving damages. was to show that the architects were justified in withholding a final certificate, and acted in good faith. We are of opinion that this criticism is not well founded. The plea. of the general issue was sufficient to allow appellants to recoup any damages which they suffered, and we find nothing in the record to indicate that they did not seek on the trial to recoup their damages for delay of appellee in completing the work and for failure to comply with the contract in several material respects. On the contrary, we think it a fair inference from the appellants' sixteenth, eighteenth and nineteenth instructions, considered in connection with the evidence as to damages, appellants meant that the jury should consider the question of their recoupment. The sixteenth instruction in effect is that if the plaintiff did not comply with its contract, and although the defendants took possession of the buildings, that fact was not a waiver of the defendants' right to hold the plaintiff liable for its delay. We think this would justify the jury in recouping damages for delay. The eighteenth instruction tells the jury, in effect, that if they believe the plaintiff was allowed to continue its work after the expiration of a reasonable time, this would not prevent the defendants from holding the plaintiff liable for its delay in completing the work. The nineteenth instruction is also of a similar nature.

It is said that the third of appellee's instructions, quoted in the statement, is erroneous because not based upon any evidence in the record, and it ignores a provision in the contract that provides that if the contractor is delayed by the act or default of the owner, no allowance shall be made therefor unless a claim in writing is presented to the architect within twenty-four hours after the occurrence of the cause or commencement of such delay. We think there is ample evidence in the record to justify the instruction, and the fact that it does not mention the clause of the contract referred to, is immaterial, since the jury made no allowance whatever to the appellee because of any delay, and none

was claimed. Moreover, it is clear from the evidence that the parties, by their acts, waived the time of the performance of the contract.

The sixth and seventh instructions for appellee are also criticised, and other criticisms than those referred to are made of the second, third and fifth of appellee's instructions, all of which have been given due consideration, in the light of the arguments of counsel and in connection with the instructions given for appellants. We think there is no cause for reversal by reason of these several matters of which complaint is made.

Appellants also claim that the court erred in refusing their second instruction, which directs the attention of the jury, among other matters, to the charge of collusion between the appellants and the architects, and tells the jury that the mere fact of a conference of the defendants, or either of them, with the architects, or either of them, in reference to the work in question, or that they called the attention of the architects to the character of the plaintiff's work or the manner of performing its contract, was not sufficient of itself to warrant the jury in finding that there was any collusion between the architects, or either of them, and the defendants, or either of them. We think that the substance of the instruction is covered by the thirteenth, fourteenth and fifteenth instructions given for appellants; that it was not necessary, as contended by counsel, specifically to define collusion, and this instruction was therefore properly refused. Besides, we think the instruction calculated to mislead the jury by calling special attention to certain matters bearing upon the bad faith of the architects, to the exclusion of far more important evidence on this same question, to which reference has been made.

Other matters presented by counsel's arguments, to which we have not referred, do not, in our opinion, justify a particular mention. We have fully considered every matter presented, and think that no reversible error in the record has been shown, and that the judgment should be and it is accordingly affirmed.

*Affirmed.*